## HING WAN WONG v. LIQUOR CONTROL COMMISSION

ALCORN, C. J., HOUSE, THIM, RYAN and SHAPIRO, Js.

Argued June 3—decided July 14, 1970

*Stephen J. O'Neill,* assistant attorney general, with whom, on the brief, was *Robert K. Killian,* attorney general, for the appellant (defendant).

*Alexander A. Goldfarb,* for the appellee (plaintiff).

ALCORN, C. J.   Under date of January 19, 1968, and after a hearing, the liquor control commission notified the plaintiff that his restaurant liquor permit had been suspended for a period of ten days. The reason for the suspension was unsuitability of person by reason of a violation of § 30-91 of the General Statutes by permitting "the sale or the dispensing or consumption or the presence in glasses or other receptacles suitable to permit the consumption of liquor by an individual of alcoholic liquor during prohibited hours."   The plaintiff appealed from the suspension to the Court of Common

Pleas, which sustained the appeal. The liquor control commission has appealed from the judgment of the court.

The essential facts are not disputed. The plaintiff is the owner-operator of a restaurant in Hartford. A sergeant of the Hartford police department received a complaint of after-hours drinking at the plaintiff's restaurant and, on Saturday, July 14, 1967, with two other detectives, went to the plaintiff's restaurant at about 1:37 a.m. This was after the hour of closing fixed by § 30-91 of the General Statutes.[1] From the street outside, the sergeant focused his flashlight through a window and saw three people seated at a table with glasses before them. The police knocked on the door of the restaurant and were admitted by the plaintiff. As they entered the restaurant, the people at the table removed the glasses from the table and placed them on the floor. The sergeant picked up one of the glasses which contained an amber-colored liquid

---

[1] "Sec. 30-91. HOURS AND DAYS OF CLOSING. The sale or the dispensing or consumption or the presence in glasses or other receptacles suitable to permit the consumption of liquor by an individual of alcoholic liquor in places operating under hotel permits, restaurant permits, club permits and golf country club permits shall be unlawful on the day of any state or municipal election during the hours of voting, and on Sunday after one a.m., Good Friday or Christmas, except when any Sunday is December thirty-first or January first, and except that any town may, by a vote of a town meeting or by ordinance, (a) allow the sale of alcoholic liquor on Sunday between the hours of twelve o'clock noon and nine o'clock in the evening in hotels, restaurants, clubs and golf country clubs and (b) prohibit the sale of alcoholic liquor from twelve o'clock midnight on Saturday until one a.m. on Sunday; and such sale or dispensing or consumption or presence in glasses or other receptacles suitable to permit the consumption of alcoholic liquor by an individual shall be unlawful on any other day between the hours of one o'clock a.m. and nine o'clock a.m., except that such sale shall be lawful on January first until three o'clock in the morning. . . ."

which smelled of alcohol. The plaintiff was arrested for a violation of § 30-91 which is a misdemeanor. General Statutes § 30-113. The contents of the glass were analyzed by the laboratory division of the state health department and were certified by both the chief of the toxicological services section and another toxicologist as containing 19.3 percent alcohol by volume. The alcoholic liquor with which § 30-91 is concerned is a liquid or solid containing more than one-half of 1 percent of alcohol by volume. General Statutes § 30-1 (2). The plaintiff was presented in the Circuit Court charged with a violation of § 30-91. He moved to suppress any and all evidence obtained by the police at the restaurant on the ground that it was obtained through an illegal search. The misdemeanor charge against him was nolled by the prosecutor on November 10, 1967, on the ground that the "search would be subject to question". On January 18, 1968, a hearing was held by the liquor control commission, after due notice, at which the plaintiff was required to show why his restaurant liquor permit should not be revoked or suspended for a violation of § 30-91. At that hearing the police sergeant testified that he went to the restaurant with the two other detectives, and described what he saw through the window, the entry into the restaurant and the confiscation of the glass and its contents as already related. He also testified that the glass and its contents were taken to the state laboratory for analysis later that morning. The state laboratory report was introduced in evidence over the objection that it was hearsay and that it had been declared to be inadmissible in a court of competent jurisdiction.

The claim now made is that the report from the state laboratory concerning the analysis of the con-

tents of the glass could not properly be considered as evidence because the glass and its contents had been obtained in an illegal search and the report of the analysis from the state health department laboratory was hearsay. The transcript of the proceedings in the Circuit Court does not support the objection made before the liquor control commission that the Circuit Court, in the proceedings there, had ruled that the evidence was inadmissible. Even if a determination by the Circuit Court in the proceedings before it could furnish a valid basis for objecting to the admission of the evidence before the liquor control commission, a point which we need not decide, there was no factual basis for that objection. In the Circuit Court the prosecutor nolle prossed the case because the "search would be subject to question". The only ruling by the court was that "[t]he record may reflect a nolle by the prosecutor". The nolle determined nothing except that it ended the particular proceeding. It was not a bar to a subsequent trial of the plaintiff for the same offense. *See* v. *Gosselin,* 133 Conn. 158, 161, 48 A.2d 560; *State* v. *Garvey,* 42 Conn. 232, 233. On the appeal from the decision of the liquor control commission, however, the Court of Common Pleas determined that the evidence concerning the glass and its contents was illegally obtained and therefore was not admissible. Consequently, that court concluded that there was no evidence from which it could find a violation of § 30-91 and it sustained the plaintiff's appeal. Section 30-60 of the General Statutes provides that on an appeal from the liquor control commission "a transcript of the hearing shall be certified to the court by the commission and the court shall admit so much thereof as is legally competent, relevant and material to the issue within the rules

of evidence". Section 30-8, which deals with hearings before the commission, contains no requirement limiting the commission to a consideration of evidence which would be admissible in a court of law. The apparent design of §§ 30-8 and 30-60 is to leave to the reviewing court the problem of extracting from the record certified to it the legally admissible evidence pertinent to the issue on the appeal. Consequently the ruling of the Court of Common Pleas concerning the admissibility of the evidence presents the issue which is before us.

Neither the United States constitution nor the Connecticut constitution forbids searches and seizures. The prohibition is against unreasonable searches and seizures. *State* v. *Collins,* 150 Conn. 488, 492, 191 A.2d 253. Nor does a search take place when officers merely see what is placed before them in full view. *Ker* v. *California,* 374 U.S. 23, 43, 83 S. Ct. 1623, 10 L. Ed. 2d 726. We believe it a misnomer to describe what occurred in this case as an illegal search and seizure. The officers observed from the street through a window, with the aid of a flashlight, persons sitting at a table near the bar with glasses before them. The officers knocked on the door and were freely admitted by the plaintiff. They took possession of a glass which they had seen from the street and which contained what smelled like alcoholic liquor. Quite aside from the approach taken in *Collins* and *Ker,* however, we find decisive support for the actions of the police in this case in *Colonnade Catering Corporation* v. *United States,* 397 U.S. 72, 90 S. Ct. 774, 25 L. Ed. 2d 60, in which the United States Supreme Court sustained the right of federal agents, without a search warrant, to break open a locked liquor storeroom over the protest of the owner.

The nature of the liquor business is such that " 'the police power to regulate and control it runs broad and deep' ". *Aminti* v. *Liquor Control Commission,* 144 Conn. 550, 552, 135 A.2d 595. "The states may absolutely prohibit the manufacture, transportation, sale or possession of such liquors within their borders or they may permit these activities under conditions prescribed by their legislatures. To these ends they can adopt such measures as they may deem reasonably appropriate". *Pierce* v. *Albanese,* 144 Conn. 241, 248, 129 A.2d 606. Section 30-106 of the General Statutes provides, in part, that the liquor control commission, "and any member of any organized police department in any town, city or borough, . . . may, at any time, enter upon the premises of any permittee to ascertain the manner in which such person conducts his business and to preserve order". In *Colonnade Catering Corporation* v. *United States,* supra, the petitioner sought the return of seized liquor and its suppression as evidence. Federal agents had visited the premises where liquor was being served. Noting a possible violation of the federal excise tax law, they asked the manager to open a locked storeroom and, when he refused, they broke it open and removed the liquor in controversy. Congress had authorized the secretary of the treasury or his delegate to enter and inspect the premises of retail dealers in liquors and had provided a fine for a licensee who refused to permit such inspection. In that case the court found no constitutional violation involved, and it said (p. 77) : "We deal here with the liquor industry long subject to close supervision and inspection. As respects that industry, and its various branches including retailers, Congress has broad authority to fashion standards of reasonable-

ness for searches and seizures. Under the existing statutes, Congress selected a standard that does not include forcible entries without a warrant. It resolved the issue, not by authorizing forcible, warrantless entries, but by making it an offense for a licensee to refuse admission to the inspector." Similarly, in exercising the broad powers which it has over the liquor industry, our General Assembly has specifically provided that city police, as in this case, "may, at any time, enter upon the premises of any permittee to ascertain the manner in which such person conducts his business". The language does not purport to authorize a forcible entry without a warrant and none was indulged in here. The actions of the police which are complained of did not constitute an illegal search and seizure.

There remains for consideration the question of whether the report from the state health department was competent evidence to establish the nature of the substance found in the glass which the officers took into their possession. We confine our discussion to the assignment of error as briefed by the plaintiff. *State* v. *Towles,* 155 Conn. 516, 518, 235 A.2d 639. The argument is that, in order to be admissible as an exception to the hearsay rule, the state was required to show the applicability of and compliance with General Statutes §§ 30-108 and 30-109. Section 30-108 permits the court, in a prosecution for manufacturing, selling, or keeping with intent to sell any alcoholic liquor, to order a sample to be conveyed to the state chemist for analysis, and § 30-109 directs the state chemist to analyze the samples presented to him and makes a copy of the record of his analysis legal evidence of the facts stated in it. The sections had no applicability to a hearing before the liquor control commission con-

cerning after-hours sales. That is not to say, however, that the sections referred to furnish the only basis for the admissibility of the report or that the report was, as claimed by the plaintiff, "illegally made, prepared and authenticated" by the toxicologists of the state health department. This latter claim is premised on the proposition that the toxicologists were not state chemists and consequently were not authorized to make a report under § 30-109.

There is no rule prescribing the precise character of the reports of public executive or administrative officers which are admissible as an exception to the hearsay rule. 30 Am. Jur. 2d, Evidence, § 999. Where a laboratory test has been made by a public agency under a duty to perform such tests, the report of the test is competent evidence of its contents under the public records exception to the hearsay rule. Id. § 1010. The entries or records of public officers when made of their acts and proceedings by some officer appointed for that purpose may be proved by a copy certified under the hand of such officer. General Statutes § 52-165. The report on its face purports to be a report of the laboratory division of the Connecticut state department of health. It is stated to be a report of a toxicological examination and is certified by the chief of the toxicological services section and another toxicologist as "a true copy of the records of the Toxicological Services Section Laboratory". The plaintiff concedes that the signers were and are employees of the state health department appointed by its commissioner. The toxicology laboratory is a unit of the state health department established and maintained by the commissioner of health the facilities of which are available to all duly constituted prosecuting, police and investigating agencies of the state.

General Statutes § 19-8. No claim is made that the analysis, or the report of the result of it, was outside the function of the certifying agency. The report was admissible as competent evidence of the facts recited in it under the public records exception to the hearsay rule. *State* v. *Torello,* 103 Conn. 511, 515, 131 A. 429; *Branford Trust Co.* v. *Prudential Ins. Co.,* 102 Conn. 481, 486, 129 A. 379.

It is unnecessary to discuss the remaining assignment of error.

There is error, the judgment is set aside and the case is remanded with direction to dismiss the appeal.

In this opinion the other judges concurred.