*Southern District*

# No. 98

# JANICE DEPIN, ADMINISTRATRIX

## v.

# AETNA LIFE INSURANCE COMPANY AND AFFILIATED COMPANIES

Argued: Nov. 12, 1974. Decided: Aug. 13, 1975

AS TO ADMISSIBILITY OF PUBLIC RECORDS, SEE 14 LEGALITE 53.

Case tried to *Silva, J.* in the Second District Court of Bristol. Number: 39827.

Present: Murphy, P.J., Lee, ———, J.J.

Counsel for plaintiff: O'Donoghue & O'Neil.

**By the Division.** This is an action of contract to recover funeral expenses resulting from the death of plaintiff's intestate under the provisions of a Massachusetts "No-Fault Personal Injury Protection Policy." The declaration alleges that the plaintiff's intestate was the owner and operator of a motor vehicle who was killed in an accident while the vehicle was so insured by the defendent.

Defendant's answer included a general denial and set up the defense that the plaintiff's intestate was at the time of the accident operating a motor vehicle while under the influence of alcohol and as such was not entitled to have benefits paid under the terms of the policy as permitted by the statute.

The court found for the defendant.

*At the trial there was evidence tending to show that:*

The plaintiff's intestate was operating a motor vehicle insured by defendant under a policy as above described but which, as permitted by Massachusetts G. L. c. 90, §34A excluded benefits if a person's conduct contributed to the injury while operating a

motor vehicle while under the influence of alcohol. The plaintiff's intestate operated his motor vehicle on Maxfield Street in a built-up area in New Bedford on May 11, 1973 at 2:15 A.M. Maxfield Street was a one-way street forming the stem of a "T" intersection with Cedar Street. He turned neither left nor right at the "T" intersection but drove straight ahead into and through an iron fence, through a porch and into the foundation of a building which foundation was over seventeen and one-half feet from the street, that plaintiff's intestate was found by a police officer behind the steering wheel with a two by four section of the porch of the building having gone through the windshield penetrating his head to a depth of three inches.

Sections of the foundation of the building were distributed around the final stopping point of the vehicle to a distance of twenty feet. Also, there was evidence from the police officer on the scene that he detected an odor of alcohol from the driver.

Plaintiff's intestate was taken to a nearby hospital where he was pronounced dead on arrival at 2:30 A.M.

The medical examiner was called in, diagnosed the cause of death as a laceration of the brain and fracture of the skull. He testified that he viewed the body in accordance with G. L., c. 38, §6 and in accordance with §6A took a blood sample for analysis by the Department of Public Safety. There was further evidence that his blood sample was transported in the normal course to the Department of Public Safety of the Commonwealth of Massachusetts and there examined. The Department furnished a report which is in evidence, having been offered pursuant to G. L., c. 233, §76, wherein it was reported that the chemical test performed indicated deceased's blood to have an alcoholic content of .27 percent.

There was further evidence from the medical examiner that the plaintiff's intestate was, in his opinion,

under the influence of alcohol at the time of the accident.

Plaintiff objected to the admission in evidence of the report of the Department of Public Safety and to the Medical Examiner's being permitted to testify. Counsel for defendant stated that said record was being offered under G. L., c. 233, §76 and further stated that the District Attorney's office gave him permission to secure said report. Plaintiff seasonably filed a claim of report with respect to each admission of evidence and requested the rulings be reported.

The court made the following findings of fact:

"I find that the plaintiff's intestate was operating a motor vehicle owned by him and insured under a Massachusetts motor vehicle combination policy issued by the defendant; that the accident occurred at the intersection of Maxfield and Cedar Streets in the City of New Bedford on May 11, 1973 at 2:15 A.M.; that the plaintiff's intestate was dead on arrival at St. Luke's Hospital; that an analysis of the plaintiff intestate's blood revealed an alcoholic content of 0.27% as evidenced by the chemical laboratory report of the Massachusetts Department of Public Safety; that on the basis of the Medical Examiner's testimony that he removed the blood and caused it to be analysed, coupled with his opinion testimony that anyone with 0.27% blood alcohol would be under influence of intoxicating liquor, I find that the plaintiff is barred from recovery under that part of the policy that excludes recovery for bodily injury if such person's conduct contributed to his injury while operating a motor vehicle while under the influence of alcohol."

The plaintiff claims to be aggrieved by the admission in evidence of the report of the Department of Public Safety and by the permitting of the Medical Examiner to testify.

There was no prejudicial error.

The issues presented in this case are as follows:

1. Was the chemical laboratory report of the Department of Public Safety admissible in evidence?

2. Was it prejudicial error to permit the Medical Examiner to testify?

We answer the first question in the affirmative and the second question in the negative.

*I. A.* We hold that the chemical laboratory report of the state police laboratory (Department of Public Safety) was admissible in evidence as an "Official Records" exception to the hearsay rule.

The pertinent portions of G. L., c. 38, §6A (St. 1972, c. 180) are as follows:

"If, . . ., the medical examiner is of the opinion that death may have resulted from injuries sustained in a motor vehicle accident, and the death occurred within four hours of the accident, and the deceased was the operator of a motor vehicle . . ., the medical examiner shall submit to the state police laboratory a sample of blood from the deceased in an amount sufficient for chemical analysis . . . .".

The plaintiff contends that the report of the Department of Public Safety is inadmissible in evidence since the statute lacks explicit authority for its admissibility. (cp. G. L. c. 90, §24(1) (e)—"breathalyzer" test; G. L. c. 138, §36—alcoholic beverage content; G. L. c. 140, §121A—ballistic tests; G. L. c. 273, §12A—blood grouping tests; G. L. c. 111, §§12, 13—narcotic drug analysis; G. L. c. 111, §195—lead paint analysis). We do not agree.

The "Official Records" common law exception to the hearsay rule is alive and well in this Commonwealth, although its continued existence has been somewhat obscured by the increasing number of statutes, some of which are noted above, authorizing

the admissibility of certain records. *Commonwealth v. Slavski,* 245 Mass. 405; Hughes, *Evidence,* Massachusetts Practice Series, Vol. 19, pp. 830-834.

Under this common law exception to the hearsay rule, where it is the duty of a public official to make a record of a primary fact such record will be received in evidence in proof of the existence of that fact. In the *Slavski* case (supra, p. 417) the court enunciated the general rule to be applied in determining the admissibility of records and documents under the Official Records exception thusly:

"The principle which seems fairly deducible . . . is that a record of a primary fact, made by a public officer in the performance of official duty is or may be made by legislation competent prima facie evidence as to the existence of that fact . . ."

In the instant case there is a statutory duty imposed upon the medical examiner to "submit to the state police laboratory a sample of blood from the deceased in an amount sufficient for chemical analysis" and, by necessary inference, upon the state police laboratory to make such analysis and the report thereof. Such analysis, and the report thereof, is a "primary fact", not involving judgment or discretion, expressions of opinion, nor the drawing of conclusions.

The Official Records exception to the hearsay rule finds support in Massachusetts decisions. In *Commonwealth v. Dorr,* 216 Mass. 314, 319, where the original record of the weather conditions kept at the weather station was held admissible in evidence to prove the statement of fact contained therein, the Court stated:

"The official record of a fact made by a public officer in the performance of his duty may be introduced in evidence as proof of the truth of the facts recorded. This rests upon the general principles of the law of evidence, and not upon the statutes."

So also in the case of *Crowe v. Ward,* 1973 Mass. Adv. Shs. 231, 233, where the court said:

"Any hearsay difficulties were obviated since the report was an official record of facts made by public officers in the performance of their duty."

See also, *Lodge v. Congress Taxi Association, Inc.,* 340 Mass. 570.

Where the records or writings have not been made or kept pursuant to a duty, they have been held to be inadmissible. *Finnegan v. Checker Taxi Co.,* 300 Mass. 62, 70; *Amory v. Commonwealth,* 321 Mass. 240, 252; *Canney v. Carrier,* 333 Mass. 382, 383-384.

The common law Official Records exception to the hearsay rule also finds support in other jurisdictions. See, *Mutual Life Insurance Company of New York v. Knight,* 178 So. 898, 901 (Fla. 1937) . (analysis and report of specimen of sputum made by the State Board of Health); *Smith v. Mott,* 100 So. 2d 173 (Fla. 1958) certificate stating the blood alcohol level of decedent in a suit for wrongful death—a case very similar on its facts to the instant case); *Hing Wan Wong v. Liquor Control Commission,* 273 A.2d 709 (Conn. 1970) (certificate of the State Department of Health showing the alcoholic content of a beverage). In the *Wong* case, the court said:

"Where a laboratory test has been made by a public agency under a duty to perform such tests, the report of the test is competent evidence of its contents under the public records exception to the hearsay rule."

B. It should be pointed out that, alternatively, the report of the Department of Public Safety could be held to be admissible under the Business Records exception to the Hearsay Rule (G. L., c. 233, §78), whereby

". . . a writing or record, . . ., made as a memorandum or record of any act, transaction, occurrence or event, shall not be inadmissible in any civil or criminal proceeding as evidence of the facts therein stated because it is transcribed or because it is hearsay or self-serving, if the court finds that the entry, writing or record was made in good faith in the regular course of business and before the beginning of the civil or criminal proceeding aforesaid and that it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence or event or within a reasonable time thereafter. For the purpose hereof, the word "business", in addition to its ordinary meaning, shall include profession, occupation and calling of every kind . . ." See *Sawyer & Co. v. Southern Pacific Co.,* 354 Mass. 481; *Ricciutti v. Sylvania Electric Products, Inc.,* 343 Mass. 347, 349; *Crowe v. Ward,* 1973 Mass. Adv. Sh. 231, 233.

Other jurisdictions have admitted reports of blood tests into evidence as records kept in the regular course of business. In the case of *Carroll, Adm'x v. Houtz,* 225 A2d 584 (NJ 1966) the court held that blood test analyses performed by an independent laboratory on a decedent's blood and brain tissues are admissible in evidence as business records under the New Jersey business records statute. *Thomas v. Hogan,* 308 F2d 355 (4th Cir. 1962). (Hospital record showing result of Bogen's tests for intoxication). See also, *Borucki v. MacKenzie Bros. Co., Inc.,* 3 A2d 224 (Conn. 1938) (Hospital records); *Allen v. St. Louis Public Service Co.,* 285 SW2d 663 (Mo. 1956) (Hospital records).

C.   Since the original report of the Department of Public Safety was admissible in evidence either under the common law Official Records exception to the hearsay rule or under the statutory Business Records exception, the copy of the report was admissible under G. L., c. 233, §76: "Where the document is a public

record, a certified copy is by statute competent evidence if the record itself was competent," (citing G. L., c. 233, §76) Leach and Liacos, *Handbook of Massachusetts Evidence,* 4th Ed., p. 260.

*II.* It was not prejudicial error to permit the Medical Examiner to testify.

The question of an expert's qualifications is for the trial justice, and his determination will be reversed only on an abuse of discretion or error as a matter of law. *Commonwealth v. Spencer,* 212 Mass. 438, 447-448; *Commonwealth v. Bellino,* 320 Mass. 635, 638; *Commonwealth v. Boyd,* 1975 Mass. Adv. Shs. 687, 703. The criterion of the justice is whether the witness possesses sufficient skill, knowledge or experience in the field of his testimony that the finder of fact may receive appreciable assistance from it. McCormick, *Evidence,* §13 (2d ed. 1972). The mere fact that the trial justice permitted the Medical Examiner to give expert testimony implies such a finding. *Commonwealth v. Boyd* (1975 AS 687, 705).

Medical examiners are "able and discreet men, learned in the science of medicine", G. L., c. 38, §1. As physicians, medical examiners are recognized for their knowledge of the human body and the effects of various traumas and other stimuli thereon. Medical examiners frequently testify as expert witnesses. With reference to the opinion testimony of a medical examiner, the court has said: "His knowledge of anatomy and his professional experience give him a capacity to express an opinion in matters 'beyond the range of general knowledge' ", *Commonwealth v. Dawn,* 302 Mass. 255, 259; *Commonwealth v. Brown,* 121 Mass. 69, 81; *Guinan v. Boston Elevated Railway,* 267 Mass. 526, 527-528.

In the instant case, the Medical Examiner had first-hand knowledge of the condition of the deceased's body. He took a sample of deceased's blood for testing and was asked his opinion as to the meaning of the

reading which was ascertained by the analysis. His testimony was competent. *Commonwealth v. Capalbo,* 308 Mass. 376, 379; *Uberto v. Kaufman,* 348 Mass. 171, 173; *Wing v. Commonwealth,* 359 Mass. 286, 288; *Kaye v. Newhall,* 1972 Mass. Adv. Sh. 1, 3; *Holloman v. Pioneer Dodge Company, Inc.,* Mass. App. Ct. Adv. Sh. (1975) 839.

*The report should be dismissed.* **So ordered.**