[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION IN LIMINE
The plaintiff moves in limine to exclude Exhibits 3, 4 and 5, allegedly establishing that the 1989 and 1990 reports of the Indian Affairs Task Force ("the task force") were not the "final report" of the task force as set forth in General Statutes §47-66h, on the grounds of irrelevancy and hearsay.
The plaintiff, the Golden Hill Paugussett Tribe ("the tribe", filed its seconded amended complaint on May 31, 1996, naming as the defendant Governor John G. Rowland. The complaint states that the tribe was willing to enter into a trust agreement with the governor in March 1991 pursuant to General Statutes § 47-66h. The complaint further states that the governor's office has been unwilling to enter into such an agreement, thereby violating the terms of General Statutes § 47-66h. CT Page 4445
The defendant in its answer dated June 10, 1996, does not admit knowledge of any willingness on the part of the plaintiff to enter into a trust agreement, but does admit contact by a representative of the tribe, Moon Face Bear, on March 20, 1991. The defendant also raises the following three special defenses: (1) General Statutes § 47-66h is unconstitutional; (2) General Statutes § 47-66h violates the principle of separation of powers and improperly interferes with the executive branch; and (3) the Indian Affairs Task Force failed to issue a final report containing trust agreement recommendations, a condition precedent to the governor entering into a trust agreement according to the terms of General Statutes § 47-66h. The plaintiff denied all three of the defendant's special defenses on June 17, 1996.
On November 22, 1996, the plaintiff filed a motion in limine[1]
to exclude defense Exhibits 3, 4 and 5[2] on the grounds that they (1) are irrelevant to the court's inquiry; and (2) contain unreliable hearsay. The defendant filed a reply brief in opposition on December 20, 1996, followed by a reply from the plaintiff on January 14, 1997.
General Statutes § 47-66h(a) provides: "Effective October 1, 1990, the Governor shall enter into a trust agreement with each willing indigenous Indian tribe. Any such trust agreement shall define the powers and duties possessed by the tribe that is party, to the agreement and shall be consistent with recommendations on trust agreements contained in the final report of the Indian, Affairs Task Force made pursuant to special act 87-103." (Emphasis added.)
At the core of the parties' dispute in the present case is the meaning of "final report" as used in General Statutes § 47-66h. Pursuant to its congressional mandate, the task force issued three reports, in 1989, 1990 and 1991.
The plaintiff would have the court construe "final report" to mean that report by the Indian Affairs Task Force which provides conclusive recommendations on the trust agreement issue. The plaintiff argues that the task force was directed to address numerous important issues, including the nature of future trust agreements between the state and Connecticut tribes. According to the plaintiff, the task force's decisive recommendations as to trust agreements were set forth in its 1990 report; thus, the plaintiff argues, for purposes of General Statutes § 47-66h, the CT Page 4446 1990 report is the "final report." As a result, the plaintiff objects to the admission into evidence of defense Exhibits 3, 4 and 5, which allegedly support the defendant's contention that neither the 1989 nor the 1990 report were the "final report" for purposes of General Statutes § 47-66h, on the ground that these exhibits are irrelevant. The plaintiff moves for exclusion of these exhibits on the grounds that they are (1) irrelevant and misleading to the court; and (2) comprised of inadmissible hearsay.
The defendant, by contrast, argues that the term "final report" means the last report in a chronological sequence, that is the 1991 report of the task force. According to the defendant, the fact that the task force did not make recommendations about trust agreements in the 1991 report cannot alter the plain meaning of "final," regardless of any negative implications this strict construction may have on the plaintiff. Applying this reasoning, pursuant to the dictates of General Statutes § 47-66h, the defendant insists that the parties may not look to either the 1989 or 1990 report for recommendations about trust agreements. The defendant thus opposes the plaintiff's motion to exclude on the ground that: (1) the exhibits are highly relevant to the court's determination of which report is "final"; and (2) the exhibits fall under exceptions to the hearsay rule as public records and as party admissions.
We will consider first background on General Statutes § 47-66h, which is necessary to the determination of the relevancy of Exhibits 3, 4 and 5 and will then deal with the admissibility of the exhibits.
Background
Statutory interpretation presents a question of law for the court. Office of Consumer Counsel v. Dept. of Public Utilities,234 Conn. 624, 641, 662 A.2d 1251 (1995). "The purpose of statutory construction is to give effect to the intended purpose of the legislature." Id.
Chapter 824 of the General Statutes, "Indians," General Statutes §§ 47-59a to 47-66j, failed to define the terms, "final" or "final report."[3] Although the word "final" is not defined, "[i]t is a basic tenet of statutory construction that the, legislature did not intend to enact meaningless provisions. Accordingly, care must be taken to effectuate all provisions of [a] statute. See Pintavalle v. Valkanos, 216 Conn. 412, 418, CT Page 4447581 A.2d 1050 (1990) (`[a] statute should be read as a whole and interpreted so as to give effect to all of its provisions'); Hopkins v. Pac,180 Conn. 474, 476, 429 A.2d 952 (1980) (it is a `well established principle that statutes must be construed, if possible, such that no clause, sentence or word shall be superfluous, void or insignificant')." Office of Consumer Counsel v. Dept. of PublicUtilities, supra, 234 Conn. 646.
The word "final" means "being the last in a series, process, or progress", and is synonymous with "last." Merriam Webster's Collegiate Dictionary 436 (10th ed. 1995). This definition is the underlying basis of the defendant's argument. Alternatively, "final" means "last, conclusive, decisive, definitive, terminated, completed." Black's Law Dictionary 579 (5th ed. 1979). This meaning supports the plaintiff's argument. We conclude therefore that (1) the definition of "final" comports with the definitions and theories offered by both parties; and (2) the meaning of "final" is not clear and unambiguous. Accordingly, the legislative history is consulted to gain insight into the meaning of "final report" as used in General Statutes § 46-66h. See Office ofConsumer Counsel v. Dept. of Public Utilities, supra, 234 Conn. 641
("If the language of a statute is plain and unambiguous, [the court] need look no further than the words actually used because [the court] assume[s] that the language expresses the legislature's intent. . . . In such a case, therefore, [the court] need not construe the statute by reference to its history and purpose. . . . In every case, however, [the court] interpret[s] a statutory term in light of its context and not in isolation.") (Citations omitted.) Id. The legislative history of General Statutes § 47-66h, enacted by Public Act 89-368, and that of the special act which extended the life of the Indian Affairs Task Force, special act 90-25, provide some guidance on the meaning of "final report."
For some background, the Indian Affairs Task Force was created in 1987 pursuant to special act 87-103. This act charged the task force with a list of topics for study and recommendation, including, but not limited to: title to reservation land; state responsibility for reservations; the jurisdiction of criminal and civil law on reservations; the legal process for determining tribal membership; the imposition of state and local taxes on reservations and tribes; and access to sacred sites. The task force issued its first report in 1989.
The 1989 report was submitted to the general assembly and its recommendations adopted in some form into Public Act 89-368. This CT Page 4448 public act extended the life of the task force for another year, specifically until February 1, 1990, by which time the task force must "submit a report of its study and recommendations to the governor or general assembly. . . ." P.A. 89-368. During the hearings on P.A. 89-368, it became evident that one reason for extending the life of the task force was because the task force had not yet completed its inquiry into possible trust agreements with the state.[4] Public Act 89-368, section 28, in extending the life of the task force, thereby directed the task force to inquire as to the "description and review of trust agreements." The extension of the task force's life to examine the issue of trust agreements in 1989 thus suggests that the original 1989 report was not conclusive as to the task force's recommendations on trust agreements. The 1989 report also was not the last chronological report of the task force.
In February 1990, the task force submitted its second report, which again made a series of recommendations to the state legislature. Beginning in March 1990, the joint committee on the environment began to hear testimony with regard to House Bill 6000, eventually passed as special act 90-25. This special act again extended the life of the task force. Special act 90-25 enumerates the areas the task force should continue to study, including the "review and analysis of the trust agreement process."[5] This statutory language suggests that the task force's work as to the study of trust agreements was not yet complete. Accordingly, this legislative history strongly suggests that the 1990 task force report was not conclusive on the issue of trust agreements, as the plaintiff would have the court believe. The 1990 report also was not the last chronological report.
The court cannot determine the meaning of "final report" based solely on statutory construction and a review of the legislative history. Accordingly, defense Exhibits 3, 4 and 5 are relevant to aid the court in its determination of what constitutes the "final report" of the task force.
Exhibits 3, 4 and 5
The plaintiff moves the court to exclude Exhibits 3, 4 and 5 on the grounds that they are irrelevant and contain hearsay. The three exhibits are relevant to the court's inquiry as to which report of the task force was "final" as set forth in General Statutes § 47-66h. The exhibits fall under exceptions to the hearsay rule, as public records and as evidentiary admissions. CT Page 4449 Accordingly, the plaintiff's motion to exclude Exhibits 3, 4 and 5 is denied.
(a) Exhibits 3 and 5: Public Records
General Statutes § 52-165 provides: "The entries or records of . . . public offices, where entries or records are made of their acts, votes and proceedings, by some officer appointed for that purpose, may be proved by a copy certified under the hand of such officer, and the seal of such . . . office, if any . . ." See alsoHing Wan Wong v. Liquor Control Commission, 160 Conn. 1, 10,273 A.2d 709 (1970), cert. denied, 401 U.S. 939, 91 S.Ct. 931,28 L.Ed.2d 218 (1971); General Statutes § 1-19 (defining a "public agency" as "any executive, administrative or legislative office of the state . . . including any committee of, or created by, any such office . . . .").
The task force, as a committee created by the state legislature, is a "public agency" as defined by General Statutes §1-19, and for purposes of General Statutes § 52-165.
The chairman of the task force, Representative John W. Thompson, certified Exhibit 3, stating, "the attached documents are true and correct copies of records including correspondence maintained by this Task Force." This certification attests that the records comprising Exhibit 3 were regularly maintained by the task force.[6] Accordingly, the documents comprising Exhibit 3 fall under the public record exception.
Exhibit 3 is relevant in that it helps establish which task force was final for the purposes of General Statutes § 47-66h. Exhibit 3 demonstrates that a "final report" was not issued until late fall 1991. As of October 4, 1991, no "final report" had been issued by the task force.[7] As of November 15, 1991, a "final report" had not yet been approved by all members of the task force.[8] The "final report," it appears was not submitted to the governor until November 21, 1991.[9] The plaintiff has not provided any convincing reason as to why the task force would employ the term, "final report," inconsistent with its usage in General Statutes § 47-66h. Accordingly, the references to a "final report" in Exhibit 3 correspond to the "final report" mentioned in General, Statutes § 47-66h. As such, Exhibit 3 is relevant in that it strongly suggests that neither the 1989 nor the 1990 report was the "final report" referenced in General Statutes § 47-66h. CT Page 4450
Exhibit 5 is a certified public record of the office of legislative research. The director of the office of legislative research, Allan Green, attested that Exhibit 5, a memorandum from a staff attorney at the office of legislative research to Representative Thompson, dated July 20, 1990, is a record kept in the normal course of business by the agency. Accordingly, the document falls under the public record exception to the hearsay rule.
Exhibit 5 states, "Although the 1990 task force report discussed in general what might be included in a trust agreement, there have been no official recommendations on the subject (Legislative Task Force on Indian Affairs, Report to General Assembly, 2/90, at 11 and 12). Furthermore, with the extension of the task force until February 1, 1991, including a mandate to review and analyze the trust agreement process, there is no final report." (Exhibit 5.) This language is relevant to support the defendant's assertion that the 1991 report of the task force is the "final report" for purposes of General Statutes § 47-66h in that the memorandum suggests that neither the 1989 nor the 1990 report was the "final report" for purposes of General Statutes § 47-66h or was conclusive as to the subject of trust agreements.
We conclude that Exhibits 3 and 5 both fall under the public record exception to the hearsay rule. Both exhibits also squarely address the issue of which report was "final" for purposes of General Statutes § 47-66h. Accordingly, these exhibits are relevant to this court's ultimate inquiry. "The rules for determining the admissibility of evidence are well settled. The trial court has broad discretion to determine both the relevancy and remoteness of evidence. Only upon a showing of a clear abuse of discretion will [the Supreme Court] set aside on appeal rulings on evidentiary matters. In considering the relevancy of evidence, [the court] ask whether it tends to establish the existence of a material fact or to corroborate other direct evidence in the case. Because there is no precise and universal test of relevancy, however, the question must ultimately be addressed on a case-by-case basis in accordance with the teachings of reason and judicial experience." (Citations omitted; internal quotation marks omitted.) Ellice v. INA Life Ins. Co. of New York, 208 Conn. 218,222, 544 A.2d 623 (1988). "In a determination of whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling." (Citations omitted.) State v. Person, 20 Conn. App. 115, 127,564 A.2d 626 (1989). CT Page 4451
Accordingly, because Exhibits 3 and 5 are both relevant to the court's inquiry as to what constitutes a final report and fall under exceptions to the hearsay rule, the plaintiff's motion to exclude these exhibits is denied.
(b) Exhibit 4: Answer to an Interrogatory as an Admission
Exhibit 4 consists of the plaintiff's responses to certain interrogatories. The defendant brings these answers to the court's attention, arguing that the answers constitute judicial admissions to the fact that a final report was not submitted until November 21, 1991. (See Exhibit 4, Interrogatories of November 22, 1991, question and answer # 2.b.6.) The plaintiff contends that these answers are not judicial admissions, and indicates that the plaintiff moved to amend these responses in December 1996. The defendant's objection to the plaintiff's motion to amend were sustained by the court (Hennessey, J.) on January 31, 1997.
Responses to interrogatories are not "conclusive on the [responding] party"; Rego v. Connecticut Insurance PlacementFacility, 219 Conn. 339, 351, 593 A.2d 491 (1991); that is, a response to an interrogatory "is not conclusive as to the burden of the opposing party of proving the fact admitted and will not prevail over evidence offered at trial." DeJesus v. CraftsmanMachinery Co., 16 Conn. App. 558, 571, 548 A.2d 736 (1988). See also General Statutes § 52-200. Although not conclusive, "answers to interrogatories by a party opponent are evidentiary admissions which could be admissible for two purposes — that is, to prove the truth of the matter and to impeach the answering party." Pomeroyv. DiBenedetto, Superior Court, judicial district of New Haven at New Haven, Docket No. 302003 (October 25, 1990, Berdon, J.).
Accordingly, the plaintiff's responses to the defendant's interrogatories may be admitted into evidence as exceptions to the hearsay rule. Furthermore, plaintiff's responses to the interrogatories are relevant to the issue of which report is the "final report" of the task force as set forth in General Statutes § 47-66h. Because Exhibit 4 falls into an exception to the hearsay rule and is relevant to the court's inquiry, the plaintiff's motion to exclude Exhibit 4 is denied.
Conclusion
For the reasons stated, plaintiff's motion in limine to CT Page 4452 exclude Exhibits 3, 4 and 5 is denied.
Mary R. Hennessey, Judge