## STATE OF CONNECTICUT *v.* ERIC N. PERSON
## (6774)

SPALLONE, DALY and FOTI, Js.

Argued June 22—decision released September 26, 1989

*F. Mac Buckley,* with whom, on the brief, was *Hubert J. Santos,* for the appellant (defendant).

*Harry Weller,* deputy assistant state's attorney, with whom, on the brief, were *Walter Flanigan,* state's attorney and *Mary Elizabeth Barran,* assistant state's attorney, for the appellee (state).

SPALLONE, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of the crimes of risk of injury to a child, General Statutes § 53-21,[1] and sexual assault in the second degree, General Statutes § 53a-71 (a) (1).[2] The defendant claims

---

[1] "[General Statutes] Sec. 53-21. INJURY OR RISK OF INJURY TO, OR IMPAIRING MORALS OF, CHILDREN. Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

[2] General Statutes § 53a-71 provides in pertinent part: "(a) A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and such other person is (1) under sixteen years of age . . . ."

that the trial court erred (1) in permitting a key defense witness to assert his fifth amendment privilege in the presence of the jury, (2) in prohibiting the defendant from calling certain expert witnesses, (3) in prohibiting the defendant from questioning the victim's best friend concerning the friend's complaint of sexual assault against her father, (4) in admitting as a state's exhibit an audiotaped interview given by the victim, (5) in permitting two police detectives to give opinions concerning the victim's credibility and "common pattern" evidence in child abuse cases, (6) in not declaring a mistrial after the prosecutor questioned a defense witness regarding his use of marihuana at the defendant's apartment, and (7) in permitting hearsay testimony that the defendant's sister had asked one of the victims not to testify and then warning the defendant's sister, in the presence of the jury, of her right against self-incrimination.

The defendant was arrested and charged with one count of sexual assault in the fourth degree; General Statutes § 53a-73a (a) (1) (D); and one count of risk of injury to a child; General Statutes § 53-21; in connection with certain sexual acts allegedly perpetrated against his older daughter. He was tried to a jury on these charges, along with the charges of risk of injury to a child and sexual assault in the second degree related to offenses involving his younger daughter, age eight at the time of the trial.[3] He was acquitted of the crimes involving the older daughter, but was convicted of the two counts involving his younger daughter (the victim).

The defendant and the victim's mother were divorced in June, 1981. Subsequent to the divorce, the victim visited the defendant on weekends at his apartment in

---

[3] The defendant's younger daughter was eight years old at the time of the trial in 1987. The events complained of occurred sometime between September 1, 1984 and January 31, 1987.

Danbury. At trial, the victim stated that during these visits the defendant would take her into his bedroom and engage in a number of sexual acts with her. The victim described these acts very specifically, in graphic detail. Moreover, the victim used anatomically correct dolls to describe the defendant's sexually abusive behavior.

The victim's doctor provided constancy of accusation testimony, stating that there was physical evidence of the victim's molestation. Other constancy of accusation testimony was provided by the victim's mother and two police officers who had investigated the matter. Following his conviction of the crimes of risk of injury to a child and sexual assault in the second degree, the defendant filed this appeal.

The defendant's first claim of error is that the trial court erred in permitting a key defense witness to assert a fifth amendment privilege in the presence of the jury. The following facts are relevant. Following the defendant's testimony, he called his friend, Dean Mercier, to testify for the defense. Mercier testified that he had been a frequent visitor at the defendant's apartment during the period of time the alleged assaults on the victim occurred and that nothing unusual had transpired while he was at the apartment. On cross-examination, in response to the state's question regarding how well he was able to perceive events during his visits to the apartment, Mercier stated that his perception was very sharp. The state then inquired whether it was true that, during such visits, Mercier frequently smoked marihuana. The defendant objected to this question, and the court excused the jury. In argument to the court, the state claimed that its inquiry into Mercier's use of marihuana was proper because a positive answer would call into question his ability to perceive events properly. The defendant argued that the introduction of this issue into the case was inflamma-

tory and moved for a mistrial. The court denied the defendant's motion for a mistrial. The court indicated that, although the question would have been improper if asked of the defendant, it was permissible for the state to question a defense witness regarding his ability to perceive. Mercier, apparently concerned that an answer to the question might incriminate him, asked for the opportunity to consult with an attorney. He left the witness stand, and, upon returning later, agreed to answer the state's questions, despite the fact that he had been unable in the interim to contact his attorney. The trial court advised Mercier against testifying under the circumstances, however, and Mercier was excused for the day.

When Mercier was recalled for cross-examination, he informed the court that he would not answer any questions about marihuana use. Defense counsel argued that Mercier's invocation of his fifth amendment privilege should occur outside the presence of the jury. The trial court denied the defendant's request, and the defendant excepted. In the jury's presence, the state asked Mercier eight questions regarding his use of marihuana.[4] In response to each question, Mercier asserted his fifth amendment privilege against self-incrimination.

The following day, the defendant recalled Mercier, and at that time Mercier waived his fifth amendment

---

[4] The questions the prosecutor asked Mercier were as follows: (1) Whether he frequently smoked marihuana while at the defendant's apartment; (2) how often he smoked when the defendant's children were present; (3) how much marihuana he smoked in general; (4) whether it was true he smoked marihuana in the presence of the defendant's children on a regular basis; (5) with whom he smoked marihuana at the defendant's apartment; (6) whether he "got high" when he smoked marihuana when the children were there; (7) whether, when he "got high" when he smoked marihuana in the children's presence, his ability to perceive events happening around him was affected; (8) whether he smoked marihuana with the defendant's oldest son.

privilege and testified that he had never smoked marihuana in the defendant's apartment when the victim was present. Upon recross-examination, the state asked several questions designed to show that Mercier's present denial of marihuana use was inconsistent with his previous assertion of his privilege against self-incrimination. During final argument, the state argued that Mercier was not credible because he had first asserted his privilege against self-incrimination and later waived that privilege, denying any involvement in any illegality.

We note at the outset that the defendant's first claim does *not* present any constitutional issues. The defendant claims no violation of his own constitutional rights, and he has no standing to assert the constitutional rights of the witness. See *State* v. *Williams,* 206 Conn. 203, 208, 536 A.2d 583 (1988); *State* v. *Jones,* 205 Conn. 723, 739, 535 A.2d 808 (1988). In essence, therefore, he presents a claim of evidentiary trial error.

The defendant claims that the circumstances in this case present the type of situation that warrants reversal of his conviction and a new trial under the theories discussed in *Namet* v. *United States,* 373 U.S. 179, 83 S. Ct. 1151, 10 L. Ed. 2d 278 (1963). Our Supreme Court discussed *Namet* v. *United States,* supra, in *State* v. *Reddick,* 197 Conn. 115, 126, 496 A.2d 466 (1985), cert. denied, 474 U.S. 1067, 106 S. Ct. 822, 88 L. Ed. 2d 795 (1986). "In *Namet* v. *United States* [supra], the United States Supreme Court addressed the issue of when a witness' claim of his privilege not to answer results in reversible error. The court outlined two aspects of the issue, each suggesting a distinct ground of error. 'First, some courts have indicated that error may be based upon a concept of prosecutorial misconduct, when the Government makes a conscious and flagrant attempt to build its case out of inferences arising from use of the testimonial privilege. . . . A second

theory seems to rest upon the conclusion that, in the circumstances of a given case, inferences from a witness' refusal to answer added critical weight to the prosecution's case in a form not subject to cross-examination, and thus unfairly prejudiced the defendant.' " *State* v. *Reddick,* supra. The defendant bases his claim of error on both theories, arguing that the prosecutor deliberately utilized the fact that Mercier had asserted his privilege against self-incrimination as a trial tactic to create "the overall implication of depravity and licentiousness in the defendant's household" and to prejudice the defendant unfairly. We find the defendant's claim unpersuasive and reject his assertion that a new trial is necessary.

First, this case does not present the scenario of prosecutorial misconduct contemplated by *Namet* v. *United States,* supra. This is not a situation in which the prosecutor deliberately called to the stand a witness whom she knew intended validly to invoke the privilege against self-incrimination. See id., 185–86; *United States* v. *Maloney,* 262 F.2d 535 (2d Cir. 1959). Rather, in this case the witness was called by the defense, and the witness' assertion of the privilege occurred in the context of cross-examination by the prosecutor. Nor should the prosecution's conduct be characterized as "deliberate attempts by the Government to make capital out of [the witness'] refusals to testify." *Namet* v. *United States,* supra, 189. The prosecutor's initial purpose in questioning Mercier regarding his use of marihuana was to impeach his credibility by casting doubt on his ability to perceive and recall the events that were the subject of his testimony. The capacity of a witness to observe, recollect and narrate an occurrence is a proper subject of inquiry on cross-examination. *State* v. *Esposito,* 192 Conn. 166, 176, 471 A.2d 949 (1984). Consumption of alcohol or drugs obviously can impair an individual's ability to observe and recall accurately

and so is a proper subject of inquiry on cross-examination. *State* v. *Heinz,* 3 Conn. App. 80, 86, 485 A.2d 1321 (1984). At the outset, then, the prosecutor's questioning of Mercier was proper. There is no support for the defendant's claim of prosecutorial misconduct.

Moreover, this is not a case in which " 'inferences from a witness' refusal to answer added critical weight to the prosecution's case in a form not subject to cross-examination, and thus unfairly prejudiced the defendant.' " *State* v. *Reddick,* supra, 126, quoting *Namet* v. *United States,* supra, 187. This is not a case, for instance, in which the prosecutor used the assertion of the privilege by an accomplice or someone linked to the defendant's crimes in order to build a case against the defendant. See *State* v. *Reddick,* supra, 127. Again, the prosecutor was merely cross-examining Mercier in an attempt to impeach his credibility. Mercier's assertion of the privilege cannot be seen as having formed the bases for inferences adding "critical weight" to the prosecutor's case. Although his refusal to answer questions concerning his use of marihuana could conceivably have caused the jury to draw an impermissible inference that he was asserting the privilege in order to hide the fact that he used marihuana; see *State* v. *Daley,* 11 Conn. App. 185, 188, 526 A.2d 14 (1987); the jury's drawing that inference would not have given critical weight to the prosecution's case. It would merely have resulted in the discrediting of a defense witness. Even if the possibility that the jury drew an impermissible inference from the fact of Mercier's assertion of the privilege could be seen as being of critical weight, any prejudice to the defendant caused thereby was defused by Mercier's subsequent testimony denying the use of marihuana. That testimony presumably settled whatever questions might have been raised in the minds of the jurors regarding his reasons for asserting the privilege. In any event, "no prejudice will generally be

presumed to flow from the refusal of a witness to answer questions concerning acts committed by him unrelated to the defendant's alleged crime . . . ." *People* v. *Jones,* 138 App. Div. 2d 405, 406, 525 N.Y.S.2d 689 (1988). We therefore conclude that the defendant in this case was not unfairly prejudiced by a likelihood that inferences from Mercier's assertion of a fifth amendment privilege added critical weight to the prosecution's case in a form not subject to cross-examination.

The state acknowledges, however, and we agree, that it was improper for the trial court to permit recross-examination for the purpose of establishing inconsistency between the implications of Mercier's assertion of the privilege against self-incrimination and his subsequent testimony that he had not used marihuana in the defendant's apartment. The refusal of a witness to testify, on the ground that it would incriminate him, cannot be the basis of any inference, either favorable to the prosecution or favorable to the defendant. *State* v. *Daley,* supra. Therefore, no inconsistency could be shown between Mercier's refusal to testify and his later statement that he had not used marihuana in the defendant's apartment. We conclude, however, that the error was harmless.

In his second claim, the defendant argues that it was error for the trial court to prohibit him from establishing, through the testimony of a psychiatrist and a psychologist, that the defendant did not fit the profile of a pedophile.

The trial court has wide discretion in ruling on the admissibility of expert testimony. *State* v. *Kemp,* 199 Conn. 473, 476, 507 A.2d 1387 (1986). In reviewing the trial court's decision, we do not decide whether this or any other court would have reached the same conclusion. *State* v. *S & R Sanitation Services, Inc.,* 202 Conn. 300, 311–12, 521 A.2d 1017 (1987). Absent a manifest

abuse of discretion, the trial court's decision will stand. *State* v. *Spigarolo,* 210 Conn. 359, 376, 556 A.2d 112 (1989); *State* v. *Hasan,* 205 Conn. 485, 488, 534 A.2d 877 (1987). We agree with the state that the trial court did not abuse its discretion when it rejected the defendant's proffer of expert testimony on whether the defendant fit the profile of a pedophile.

A majority of the courts that have considered the issue have rebuffed attempts on the part of the state as well as the defendant to present testimony of this kind. See, e.g., *Douglas* v. *United States,* 386 A.2d 289 (D.C. App. 1978) (evidence that defendant fit into statistical category of abuser extremely prejudicial); *Sanders* v. *State,* 251 Ga. 70, 303 S.E.2d 13 (1983); *State* v. *Loebach,* 310 N.W.2d 58 (Minn. 1981) (error to admit profile of battering parents); *State* v. *Claflin,* 38 Wash. App. 847, 690 P.2d 1186 (1984); *State* v. *Steward,* 34 Wash. App. 221, 660 P.2d 278 (1983). In *Douglas* v. *United States,* supra, 296, the court noted that the defendant, through expert testimony, was attempting to prove "that the absence of articulated or observable sexual abnormalities established the fact that he did *not* commit the particular offense with which he had been charged." The court stated, "[w]e do not regard the field of psychology as being so exact . . . as to be able to determine with sufficient reliability that an individual did *not* commit a certain act, based solely on the presence of some characteristics and the absence of certain observable symptoms." (Emphasis in original.) Id. We agree that psychiatric evidence regarding the propensity or lack of propensity of a defendant to commit a crime should not be allowed. See C. Tait & J. LaPlante, Handbook of Connecticut Evidence (2d Ed.) § 7.16.3 (i). When scientific expertise is offered in an area outside the general knowledge of the average juror, the subject matter of such testimony must be sufficiently established to have gained general acceptance

in the particular field. *Frye* v. *United States,* 293 F. 1013, 1014 (D.C. App. 1923). " 'Just when a scientific principle or discovery crosses the line between the experimental and demonstrable stages is difficult to define. Somewhere in this twilight zone the evidential force of the principle must be recognized, and while courts will go a long way in admitting expert testimony deduced from a well recognized scientific principle or discovery, the thing from which the deduction is made must be sufficiently established to have gained general acceptance in the particular field in which it belongs.' " *State* v. *Hasan,* supra, 489, quoting *Frye* v. *United States,* supra; see also *State* v. *Spigarolo,* supra. The defendant failed to elicit testimony from either expert that the profile that was to be the subject of his testimony was accepted by the scientific community.

Moreover, the trial court was justified in excluding the expert testimony offered by the defendant because the defendant failed to demonstrate that the witnesses had a special skill or knowledge directly applicable to a matter at issue that would make their testimony informative and helpful to the jury. "Expert testimony is admissible if the witness possesses a special skill or knowledge directly applicable to a matter in issue, the skill or knowledge is not commonly shared by the average person, and the testimony would be helpful to the court or jury in considering the issues . . . . " *State* v. *Hasan,* supra, 488. Although the defendant's experts testified that they were experienced in treating a number of sexual offenders and victims, they did not testify to having had any experience dealing with incestuous relationships such as that presented in this case. At least one modern commentator takes the view that the incest offender's chief aberrancy is incest and that, usually, there is no history of other sexually related problems occurring outside the family. Groff & Hubble, "Incest," 11 Criminal Justice and Behavior,

461, 473 (1984). Incestuous fathers are often excluded from the studies of pedophiles. M. de Chesney, "Father Daughter Incest," 4 Behavioral Sciences and the Law, 382 (1985). Because the defendant never established that his expert witnesses had expertise in areas directly related to intrafamily sexual abuse, the trial court could reasonably have concluded that it was unlikely that their testimony would be of help to the jury.

The defendant's third claim is that the trial court erred in excluding evidence that the victim's best friend had accused her father of conduct similar to the conduct in which the defendant had engaged. The following facts are relevant. The friend was the first person the victim told that she was being sexually abused by her father. The friend reported the conversation to her mother, who, in turn, informed the victim's mother. As a result of a complaint made by the friend, the friend's father had been charged with two counts of risk of injury and two counts of sexual assault in the second degree. To establish this fact and the fact that the victim and her friend had discussed these matters, the defense subpoenaed the friend. The state filed a motion in limine seeking to bar the friend's testimony. The friend's personal counsel moved to quash the subpoena. The defendant argued that the friend's testimony could be vital to the defense and that he wished to question her for the purpose of proving knowledge of sexual activity on the part of the friend and the victim and a motive on the part of the two children against their respective fathers. Counsel wanted to investigate the possibility that the victim had obtained her knowledge of sexual matters from stories told to her by the friend, as well as the possibility that the victim and the friend had either fabricated or fantasized the events described by the victim. The trial court ruled that the defendant could not question the friend regarding the charges against her father, but that the defendant could

question her regarding statements the victim had made to her concerning the activities of the defendant. The court relied, in part, on relevancy grounds.[5]

The trial court has broad discretion in determining the relevancy of proffered evidence. *State* v. *Pollitt,* 205 Conn. 61, 91, 530 A.2d 155 (1987). A ruling excluding evidence as irrelevant will not be disturbed absent a showing of a clear abuse of discretion. *State* v. *Fritz,* 204 Conn. 156, 167–68, 527 A.2d 1157 (1987); *State* v. *Watkins,* 14 Conn. App. 67, 73, 540 A.2d 76, cert. denied, 208 Conn. 804, 545 A.2d 1102 (1988). In a determination of whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. *State* v. *DeAngelis,* 200 Conn. 224, 238, 511 A.2d 310 (1986); *State* v. *Escobales,* 16 Conn. App. 272, 277, 547 A.2d 553 (1988).

The defendant urges upon us the proposition that, because the victim and her friend made similar complaints against their fathers, the jury should have been made aware of this fact for the purpose of weighing the credibility of the victim. The defendant's argument

---

[5] The trial court apparently also based its ruling on General Statutes § 54-86d and § 54-86e, which provide as follows:

"[General Statutes] Sec. 54-86d. DISCLOSURE OF ADDRESS OR TELEPHONE NUMBER BY VICTIMS OF SEXUAL ASSAULT. Any person who has been the victim of a sexual assault under section 53a-70, 53a-70a, 53a-71, 53a-72a, 53a-72b or 53a-73a, or injury or risk of injury, or impairing of morals under section 53-21, or of an attempt thereof, shall not be required to divulge his or her address or telephone number during any trial or pretrial evidentiary hearing arising from the sexual assault or injury or risk of injury to, or impairing of morals of, children; provided the judge presiding over such legal proceeding shall find: (1) Such information is not material to the proceeding, (2) the identity of the victim has been satisfactorily established, and (3) the current address of the victim is made available to the defense."

"[General Statutes] Sec. 54-86e. INFORMATION RE NAME AND ADDRESS OF VICTIM OF SEXUAL ASSAULT TO BE CONFIDENTIAL. The name and address of the victim of a sexual assault under section 53a-70, 53a-70a, 53a-71, 53a-72a, 53a-72b or 53a-73a, or injury or risk of injury, or impairing of morals

rests upon an assumption that the victim's credibility would somehow automatically be placed in question by evidence of the fact that she had a friend who claimed, as did she herself, to have been the victim of sexual abuse. There is no necessary logical link, however, between the fact that the victim had a friend who also claimed to be a victim of sexual abuse and a conclusion that the victim might therefore be an unreliable witness whose testimony regarding the defendant's actions was not worthy of belief. In the absence of evidence tending to show the significance, if any, of the fact that the friend had also claimed to have been sexually abused, that fact indicates nothing about the accuracy and reliability of the victim's testimony regarding the defendant. In the absence of evidence to establish a connection between the friend's personal circumstances and the victim's credibility, the trial court reasonably concluded that the basis for the defendant's questions was mere speculation and that

---

under section 53-21, or of an attempt thereof shall be confidential and shall be disclosed only upon order of the superior court, except that such information shall be available to the accused.''

In his reply brief, the defendant argues that "[t]o the extent that the trial court relied upon Conn. Gen. Stat. Sec. 54-86e . . . to rule that [the friend's] testimony was to be excluded . . . it is unconstitutional as a violation of the due process clauses of the Constitution of The United States and the State of Connecticut." The extent of the defendant's briefing of this claim is this declaration in his reply brief followed by a citation to *Washington* v. *Texas*, 388 U.S. 14, 19, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967). We will not review this claim under these circumstances. In any event, we need not review a constitutional claim where, as here, there is some other ground on which the case may be decided. See *State* v. *Warren*, 14 Conn. App. 688, 699, 544 A.2d 209 (1988).

The record does not indicate whether the defendant argued that his constitutional right to confrontation would be implicated by a decision to exclude the friend's testimony. Nevertheless, on appeal, he declares in his brief that "[t]he trial court's decision to prohibit testimony concerning [the friend's] accusations against her father denied [the] defendant his constitutional right to confrontation." The defendant did not brief this claim and therefore we will not consider it.

further inquiry was therefore unjustified. See *State* v. *Daniels,* 8 Conn. App. 190, 194, 512 A.2d 936 (1986).

The defendant's fourth claim is that the trial court erred both in admitting into evidence, as a state's exhibit, an audiotape recording of an interview with the victim conducted by Detective Daniel Mulvey of the Danbury police department, and in permitting the jury to bring the tape into the jury room to play during its deliberations. The circumstances surrounding admission of the tape were as follows. Mulvey testified that, on February 10, 1987, he conducted an audiotaped interview with the victim during which he took her statement. Mulvey used a question and answer format to obtain the statement. The state offered the tape as an exhibit. The defendant objected on sixth amendment and hearsay grounds. The state argued that the tape was admissible under the constancy of accusation exception to the hearsay rule. The trial court agreed with the state that the tape was admissible to show constancy of accusation, and the tape was admitted as state's exhibit 2 and played to the jury during the trial. The trial court explained to the jury that the tape had been admitted to show constancy of accusation, and it fully explained the constancy of accusation doctrine in its instructions. The jury was permitted to take the tape and a tape recorder into the jury room during deliberations.

We first consider the state's argument that the defendant's claim is not reviewable because the defendant did not object when the court permitted the jurors to take a tape recorder into the jury room so that they would be able to play the tape during deliberations. The state contends that the defendant thus failed to preserve the issue for appellate review. See Practice Book § 4185. We disagree. The defendant's objection to the admissibility of the tape was sufficient to express his objection to its submission to the jury. The purpose of

any evidentiary objection is to prevent the evidence from being considered by the trier of fact. Having objected to the admissibility of the tape, the defendant successfully preserved the issues distinctly raised before the trial court for appellate review. See Practice Book § 4185. He was not required to repeat those objections at the time the jury was given the tape recorder for use during deliberations.

Although we have found that the defendant took the necessary steps in the trial court to preserve for appellate review the issue of whether the trial court erred in admitting the tape under the constancy of accusation exception to the hearsay rule, we nevertheless decline to review his claim because he has failed adequately to brief the issue.[6] Under such circumstances, we consider the claim abandoned and decline to review it. See *State* v. *Fiocchi,* 17 Conn. App. 326, 327 n.3, 553 A.2d 181, cert. denied, 210 Conn. 812, 556 A.2d 611 (1989). Similarly, although the defendant objected in the trial court to admission of the tape on the ground of denial of his sixth amendment right to confrontation, and now repeats that claim on appeal, he has failed to discuss the issue in his briefs to this court.[7] We therefore decline to review this claim as well.

---

[6] The defendant does declare in his brief that the constancy of accusation rule "does not permit the admission ,of prior written, oral or videotaped statements of the victim. It simply permits the witness, in this case Detective Mulvey, to repeat what the victim told him, as long as the victim has so testified about the matter on direct examination." Then, in his reply brief, the defendant states, "[w]hile the taped interview was allowed under the constancy of accusation exception to the hearsay rule, that exception could only apply to the complainant's prior statement, not the statements of Detective Mulvey." These declarations by the defendant represent the only briefing on the issue of whether the trial court erred in admitting the tape under the constancy of accusation exception to the hearsay rule. The defendant has cited no authority in support of these propositions.

[7] The defendant's attempt to brief the issue is limited to a declaration in his reply brief that his "sixth amendment right to confront Detective Mulvey was violated" by the court's decision to allow the jury to bring the tape to the jury room for use during deliberations.

The defendant's fifth claim of error is that the trial court erred in permitting two police detectives to render opinions concerning the victim's credibility and "common pattern" evidence in child abuse cases. Neither his claim that one of the detectives was improperly allowed to comment on the credibility of the victim, nor his claim that the other detective was impermissibly permitted to testify regarding patterns of conduct of child molesters, was raised by him in the trial court. We need not review evidentiary claims that were not distinctly raised in the trial court. See Practice Book § 4185; *State* v. *Rogers,* 199 Conn. 453, 462, 508 A.2d 11 (1986). Moreover, the defendant states no claim for review under *State* v. *Evans,* 165 Conn. 61, 67–69, 327 A.2d 576 (1973), and we see no reason to accord the defendant's claims plain error review. See *State* v. *Smith,* 209 Conn. 423, 426–27, 551 A.2d 742 (1988).

The defendant's sixth claim is that the trial court erred in twice refusing to grant a mistrial following questions by the prosecutor concerning use of marihuana at the defendant's apartment. The prosecutor first raised the question of marihuana use during the victim's testimony. When the victim was asked if the defendant smoked anything around her, she answered that he smoked cigarettes. The victim was then asked whether the defendant ever smoked anything else. The defendant objected, and the jury was excused. The court sustained the objection and gave a cautionary instruction. The defendant moved for a mistrial, and the court denied the motion.

The issue of marihuana use arose again when the defendant called his landlord, Joseph Marzullo, who testified on direct examination that the defendant and the victim had a good relationship. On cross-examination, the prosecutor asked Marzullo if his opinion about the defendant's relationship with the victim would change if he knew that the defendant regularly smoked mari-

huana in front of the children. The defendant objected, and the jury was excused. The court sustained the objection. The defendant moved again for a mistrial, and the court denied the motion.[8]

The general rule in Connecticut is that a mistrial is granted only where it is apparent that as a result of some occurrence during trial a party has been deprived of the opportunity for a fair trial. *State* v. *Hancich,* 200 Conn. 615, 624–25, 513 A.2d 638 (1986); *State* v. *Maldonado,* 193 Conn. 350, 356, 478 A.3d 581 (1984). The trial court enjoys wide discretion in deciding whether a mistrial is warranted, and its decision will be reversed on appeal only if it is established that this discretion has been abused. *State* v: *Hancich,* supra, 625.

The defendant argues that, because drug use is regarded by many persons "in today's environment" as a major threat to society, testimony about marihuana use at the defendant's apartment in the presence of his children was "so obviously prejudicial as to deny the defendant a fair trial." We disagree with the defendant's contention that in the circumstances of this case the trial court should have declared a mistrial. In the first instance, the record fails to support the defendant's contention that there was any "testimony" regarding the use of marihuana. It appears that objections were made and sustained on both occasions that the prosecutor attempted to elicit information in this regard. Even if the questions were improper, as the trial court apparently decided they were, the fact that the questions were asked is not enough to deprive the defendant of a fair trial, particularly where the court gave an appropriate cautionary instruction to the jury.

[8] In his brief, the defendant also points to the prosecutor's attempt to elicit responses regarding the use of marihuana from Dean Mercier. The claim involving Mercier has been sufficiently addressed in our discussion of the defendant's first claim of error. It is unnecessary to repeat that discussion as part of our review of his sixth claim.

We conclude that the trial court did not abuse its discretion in denying the defendant's motions for a mistrial.

The defendant's final claim is that the trial court erred both in admitting hearsay testimony that the defendant's sister had told his older daughter not to testify and then in advising the defendant's sister, in the presence of the jury, of her privilege against self-incrimination.

The state called Jo-Ann Person, the mother of the defendant's older daughter. She testified that the defendant's older daughter had told her that the defendant's sister, Holly Person, had called and asked his older daughter not to testify against the defendant. The defendant objected on the ground that the testimony was hearsay. The trial court admitted the testimony under the constancy of accusation exception to the hearsay rule.

Later in the trial, the defendant's sister was called to testify. The defendant asked her whether she had telephoned Jo-Ann Person in March, 1987, and Holly Person responded that she had done so. The defendant asked her who had answered the telephone. Holly Person answered that the defendant's older daughter had answered. When the defendant asked Holly Person to describe what occurred during the ensuing telephone conversation, the state objected, and the court engaged the witness in the following exchange:

"The Court: I should warn you, since you do not have an attorney present, and I have been informed, I don't know if it's true or not, but we got partially into the—are you under arrest for any criminal charge?

"The Witness: No, I am not.

'The Court: Okay. There was a reference by the police department that they made a referral to another police

department concerning these telephone calls, and I just wish to tell you that you do not need to answer any of these questions on the grounds that it might tend to incriminate you.

"The Witness: Your Honor—

"The Court: Since you don't have an attorney here, I'm obligated, by law, to tell you that.

"The Witness: Thank you, Your Honor. May I answer the question?

"The Court: That's going to be up to you.

"The Witness: I will. May I explain?

"The Court: No, I don't know what the question is, now—let's get to the question."

Thereafter, the witness answered questions concerning the telephone conversation.

The defendant argues that the court's admission of Jo-Ann Person's testimony regarding what the defendant's older daughter told her was erroneous because the testimony was hearsay. We will not review this claim because the defendant has failed to brief the issue of whether the trial court erred in admitting the testimony under the constancy of accusation exception to the hearsay rule. We note, however, that even if the court's ruling was erroneous, the defendant has failed to demonstrate that such error was harmful. When a claimed error is evidentiary, the defendant bears the burden of establishing its harmfulness. *State* v. *Nelson*, 17 Conn. App. 556, 568, 555 A.2d 426 (1989). In this case, the jury had already heard, from the defendant's older daughter herself, about Holly Person's telephone conversation with her. An erroneous ruling should not be considered reversible error if the evidence admitted thereby has already properly entered the case. Id.

Therefore, even if the trial court erred in admitting Jo-Ann Person's testimony regarding what the defendant's older daughter told her, the record is clear that the error was harmless.

With regard to the court's remarks to Holly Person, the defendant argues that the court erred in questioning her as it did in the presence of the jury "in a manner bearing directly on her credibility." Relying on *State* v. *Echols,* 170 Conn. 11, 14, 364 A.2d 225 (1975), he argues that a judge must refrain from making remarks that are indicative of either favor or condemnation. The defendant contends that the court's remarks deprived him of a fair trial.

The defendant's arguments are without merit. First, on the basis of the evidence presented at the trial, the court simply anticipated the possibility that the witness, who was not represented by counsel, might be entitled to assert her fifth amendment privilege against self-incrimination. The court took reasonable steps to inform the witness of her rights and to give her a meaningful opportunity to exercise them if she chose. We do not think this solicitousness on the part of the court with regard to the witness' constitutional rights caused the witness' credibility to be compromised before the jury. Moreover, the court's action was not, as claimed by the defendant, in any way indicative of condemnation. We fail to see how the court's remarks could possibly have caused the defendant to be deprived of a fair trial.

There is no error.

In this opinion the other judges concurred.