# STATE OF CONNECTICUT *v.* MARK WEGMAN
## (AC 20999)

Dranginis, Flynn and McDonald, Js.

Argued January 23—officially released June 4, 2002

*Michael Dolan*, for the appellant (defendant).

*Kevin Doyle*, assistant state's attorney, with whom, on the brief, were *Mary M. Galvin*, state's attorney, and *Denise B. Smoker*, assistant state's attorney, for the appellee (state).

*Opinion*

DRANGINIS, J. The defendant, Mark Wegman, appeals from the judgment of conviction, rendered after a jury trial, of four counts of risk of injury to a child in violation of General Statutes § 53-21 and two counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2). On appeal, the defendant claims that the trial court improperly (1) denied his motion for a continuance to review subpoenaed documents, (2) permitted the victim to testify via videotape pursuant to General Statutes § 54-86g because she was fifteen years old at the time she testified[1] and (3) denied his motion to recall the victim after receiving additional subpoenaed documents that inadvertently had been withheld. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. When the victim's older brother was about ten or eleven years old, the defendant began a relationship with him. The victim's family described the defendant as a sort of "big brother" to him. On most occasions when the brother was with the defendant, they were alone, but sometimes the victim, who was about eight or nine years old, also would go to the defendant's apartment. The defendant let the children play video games, use a computer and watch television at his apartment. He took the children to church and to various restaurants, shopping, arcades and amusement parks.

---

[1] Testimony began one week prior to the victim's sixteenth birthday.

The defendant allowed them to take hot showers and fed them at his apartment.[2] Between February, 1995, and August, 1996, the defendant sexually abused the victim and gave her money, usually $10 or $20, so that she would not tell anyone about the abuse. During that time, he took photographs and videotapes of the victim unclothed and exposing her vagina. He also gave her mother money with which she would purchase drugs, and told the victim that he and the victim would get into trouble if she told anyone about what the two of them had done together. The record reveals that the mother was aware that the defendant had a history of child sexual abuse, but let her children go with him nonetheless.

In May, 1995, the victim's brother, then age thirteen, moved out of state to live with his father, and the victim's contact with the defendant increased. She testified that the defendant would pick her up every weekday after school. She also would see him on weekends. On some of those occasions, too many times for the victim to count accurately, he would sexually assault her and give her money in exchange for her silence. The first such incident about which she testified took place in 1995. On July 21, 1995, the police received a complaint that the victim, who then was nearly twelve years old, was alone with the defendant in his apartment. The victim took a shower and, still undressed, lay down on the defendant's bed. He lay down next to her and, with his clothes on, masturbated and rubbed his penis on her leg. When the police knocked at the door, the victim ran into the bathroom to pretend that she was washing. The defendant gave her $10 or $20 on that occasion. In response to police questioning, the victim denied

---

[2] The record reveals that the children's mother had a long history of drug abuse and often left the children without supervision. The family was in and out of shelters. It often had no hot water with which to bathe and often went without food.

that any abuse had occurred. A few days later, the defendant had a meeting with the victim and her mother. The defendant videotaped the victim saying that he had never touched her inappropriately. On two or three other occasions between February, 1995, and August, 1996, the defendant photographed her naked after he digitally penetrated her vagina with his fingers. The victim and the defendant also had sexual intercourse, and the defendant masturbated in her presence. He also videotaped her posing naked during some of those episodes.

The victim was placed in foster care in August, 1996, after her mother's parental rights were terminated. Soon thereafter, the victim first told her foster mother about the abuse. The defendant subsequently was arrested in 1997. The state executed a search warrant at the defendant's apartment in 1998 to look for a videotape of the victim that she had described and said was hidden underneath the sink. The defendant told police that they did not need a search warrant because "there was nothing incriminating in his apartment. That he had gotten rid of it a long time ago . . . ." At no time did the police recover incriminating videotapes.

The jury returned a verdict of guilty on all six counts. The court sentenced the defendant to a total effective term of forty years incarceration and ten years probation. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the court improperly denied his motion for a continuance to review certain subpoenaed documents, thereby depriving him of his constitutional right to confrontation. We are not persuaded.

"A motion for continuance is addressed to the discretion of the trial court and its ruling will not be over-

turned absent a showing of clear abuse of that discretion. . . . In our review of the trial court's ruling on a motion for continuance, [e]very reasonable presumption in favor of the proper exercise of the trial court's discretion will be made." (Citations omitted; internal quotation marks omitted.) *Hirsch* v. *Squillante*, 17 Conn. App. 354, 356, 552 A.2d 1222 (1989). " 'It must be shown that the trial judge acted arbitrarily and substantially impaired [the] defendant's ability to defend himself, before an appellate court will conclude that the trial judge abused his discretion.' *United States* v. *Ellenbogen*, 365 F.2d 982, 985 (2d Cir. 1966), cert. denied, 386 U.S. 923, 87 S. Ct. 892, 17 L. Ed. 2d 795 (1967)." *State* v. *Marra*, 195 Conn. 421, 437–38, 489 A.2d 350 (1985); see also *Hyllen-Davey* v. *Plan & Zoning Commission*, 57 Conn. App. 589, 599, 749 A.2d 682, cert. denied, 253 Conn. 926, 754 A.2d 796 (2000). "Our assessment of the reasonableness of the trial court's exercise of discretion is limited to a consideration of those factors on the record known to the court at the time it rendered a decision." *State* v. *Bradley*, 39 Conn. App. 82, 87, 663 A.2d 1100 (1995), cert. denied, 236 Conn. 901, 670 A.2d 322 (1996).

Our Supreme Court, in *State* v. *Hamilton*, 228 Conn. 234, 636 A.2d 760 (1994), articulated several factors to be considered in determining whether a trial court abused its discretion in granting or denying a continuance. The factors include "the likely length of the delay; the age and complexity of the case; the granting of other continuances in the past; the impact of delay on the litigants, witnesses, opposing counsel and the court; the perceived legitimacy of the reasons proffered in support of the request; the defendant's personal responsibility for the timing of the request; the likelihood that the denial would substantially impair the defendant's ability to defend himself; the availability of other, adequately equipped and prepared counsel to try the case;

and the adequacy of the representation already being afforded to the defendant. . . . Another set of factors has included, as part of the inquiry into a possible abuse of discretion, a consideration of the prejudice that the defendant actually suffered by reason of the denial of the motion for continuance." (Citations omitted.) Id., 240–41.

In this case, the defendant subpoenaed records from the department of children and families (department) and from a residential treatment facility at which the victim resided from May 28, 1998, to September 24, 1998.[3] The court reviewed the documents in camera and, on the morning of the victim's videotaped testimony, disclosed some of the documents to the state and to the defendant. Other documents given to the defendant by the state that morning included a medical report and evaluation from a hospital child sexual abuse clinic. The defendant sought a continuance so that he could review the documents before the videotaped testimony of the victim began. The state objected and averred that it had an "open file policy" such that the hospital report had been available to the defendant prior to that date.

The court denied the defendant's motion, concluding that "by and large . . . defense counsel has had adequate time to prepare for this hearing. It has been set down, and the case has been pending for over two years. I don't feel there is any sound legitimate reason why the case should not go forward today." The court further stated that "if, when it comes to the defense opportunity to [cross-examine], if there is some part of that examination which they feel unprepared for today, which relates to those new records that you have received, then I will allow you to have a brief continuance or purposes of either viewing yourself or con-

---

[3] The victim's foster mother was not able to handle the child's emotional needs and returned her to the care of the department.

sulting with your expert or anyone else that you feel that you need. . . . If at some point on cross you need time, I will give you a reasonable continuation . . . ." The court then clarified that "a brief continuance" could mean that the case would be continued to another date.

Under the circumstances of this case, we cannot conclude that the court abused its discretion. It appears that the court was mindful that the parties had been ready to proceed and that further delay would likely promote increased anxiety in the victim. Thus, the court properly was hesitant to grant a continuance at that time. The court was willing, however, to reconsider the motion if, during the course of cross-examination, the need arose. The court further indicated that such continuance might be only so long as to give the defendant another day. The defendant did not request such a continuance. Moreover, the materials that had been undisclosed prior to the morning of the victim's testimony were limited or previously made available to the defendant. We conclude that the court's denial of the defendant's motion for a continuance was neither arbitrary nor unreasonable.

## II

The defendant next claims that the court improperly allowed the victim to testify via videotape. Specifically, the defendant argues that he was deprived of his constitutional right to confront the witnesses against him because (1) the state failed to meet the requirements set forth in *State* v. *Jarzbek*, 204 Conn. 683, 529 A.2d 1245 (1987), cert. denied, 484 U.S. 1061, 108 S. Ct. 1017, 98 L. Ed. 2d 982 (1988), and (2) the victim was age fifteen at the time she gave her testimony and therefore could not be videotaped pursuant to § 54-86g.[4] We disagree.

[1] General Statutes § 54-86g provides: "(a) In any criminal prosecution of an offense involving assault, sexual assault or abuse of a child twelve years of age or younger, the court may, upon motion of the attorney for any party, order that the testimony of the child be taken in a room other than the

"It is well established that a defendant has the right to confront witnesses against him as guaranteed by the confrontation clauses of both our federal and state constitutions. . . . [T]he right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations. The rights to confront and cross-examine witnesses and to call witnesses in one's own behalf have long been recognized as essential to due process." (Citations omit-

courtroom in the presence and under the supervision of the trial judge hearing the matter and be televised by closed circuit equipment in the courtroom or recorded for later showing before the court. Only the judge, the defendant, the attorneys for the defendant and for the state, persons necessary to operate the equipment and any person who would contribute to the welfare and well-being of the child may be present in the room with the child during his testimony, except that the court may order the defendant excluded from the room or screened from the sight and hearing of the child only if the state proves, by clear and convincing evidence, that the child would be so intimidated, or otherwise inhibited, by the physical presence of the defendant that a compelling need exists to take the testimony of the child outside the physical presence of the defendant in order to insure the reliability of such testimony. If the defendant is excluded from the room or screened from the sight and hearing of the child, the court shall ensure that the defendant is able to observe and hear the testimony of the child, but that the child cannot see or hear the defendant. The defendant shall be able to consult privately with his attorney at all times during the taking of the testimony. The attorneys and the judge may question the child. If the court orders the testimony of a child to be taken under this subsection, the child shall not be required to testify in court at the proceeding for which the testimony was taken.

"(b) In any criminal prosecution of an offense involving assault, sexual assault or abuse of a child twelve years of age or younger, the court may, upon motion of the attorney for any party, order that the following procedures be used when the testimony of the child is taken: (1) Persons shall be prohibited from entering and leaving the courtroom during the child's testimony; (2) an adult who is known to the child and with whom the child feels comfortable shall be permitted to sit in close proximity to the child during the child's testimony, provided such person shall not obscure the child from the view of the defendant or the trier of fact; (3) the use of anatomically correct dolls by the child shall be permitted; and (4) the attorneys for the defendant and for the state shall question the child while seated at a table positioned in front of the child, shall remain seated while posing objections and shall ask questions and pose objections in a manner which is not intimidating to the child."

ted; internal quotation marks omitted.) *State* v. *Rolon*, 257 Conn. 156, 175, 777 A.2d 604 (2001).

We are mindful, however, that "the right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." (Internal quotation marks omitted.) *State* v. *Alexander*, 254 Conn. 290, 298, 755 A.2d 868 (2000); *State* v. *Jarzbek*, supra, 204 Conn. 693.

In *State* v. *Jarzbek*, supra, 204 Conn. 704, our Supreme Court held that the practice of videotaping the testimony of young children outside the physical presence of the defendant is constitutionally permissible under certain circumstances. In that case, the court held that "a trial court must determine, at an evidentiary hearing, whether the state has demonstrated a compelling need for excluding the defendant from the witness room during the videotaping of a minor victim's testimony. In order to satisfy its burden of proving compelling need, the state must show that the minor victim would be so intimidated, or otherwise inhibited, by the physical presence of the defendant that the trustworthiness of the victim's testimony would be seriously called into question. Furthermore, the state bears the burden of proving such compelling need by clear and convincing evidence. . . . Although the trial court may consider the well-being of the witness as a significant factor in its analysis, the state cannot prove need simply by demonstrating that the victim would suffer some harm if forced to testify in the presence of the accused." (Citations omitted.) Id., 704–705. The court reiterated that "in light of the constitutional right of confrontation at stake here, the primary focus of the trial court's inquiry must be on the reliability of the minor victim's testimony, not on the injury that the victim may suffer by testifying in the presence of the accused." Id., 705.

Although *Jarzbek* predates § 54-86g, our Supreme Court has held that "the trial court's discretion under § 54-86g to order the taking of the victim's testimony outside the defendant's physical presence is circumscribed by the criteria established in *Jarzbek*." *State* v. *Snook*, 210 Conn. 244, 251, 555 A.2d 390, cert. denied, 492 U.S. 924, 109 S. Ct. 3258, 106 L. Ed. 2d 603 (1989).

A

The defendant argues that the state failed to meet its burden under *Jarzbek* because the state did not offer evidence that the victim understood what it meant to testify in court. Specifically, he argues that its burden was not met because there was no testimony to indicate that the victim understood that other individuals would be present in the courtroom in addition to the defendant, including the prosecutor, court reporter, clerk and security officers. We are not persuaded.

The first requirement of *Jarzbek* is that "the minor victim would be so intimidated, or otherwise inhibited, *by the physical presence of the defendant* that the trustworthiness of the victim's testimony would be seriously called into question." (Emphasis added.) *State* v. *Jarzbek*, supra, 204 Conn. 705. Although the presence of other individuals in the courtroom in addition to the defendant may, in fact, diminish the likelihood that the victim would be so intimidated, the defendant provides no case law, and we know of none, in support of his claim that the state must affirmatively show that the victim understood that other people would be present in court besides the defendant.

The quantum of proof necessary for the state to prove that the videotaped testimony is proper is "clear and convincing evidence." Id., 705. "The [clear and convincing] standard is a degree of belief that is between the belief required in the average civil case and the belief of guilt beyond a reasonable doubt required in a criminal

action. Such a burden of persuasion requires a reasonable belief that the facts asserted are highly probably true [or] that the probability that they are true . . . is substantially greater than the probability that they are false . . . ." (Internal quotation marks omitted.) *Clark v. Drska*, 1 Conn. App. 481, 487, 473 A.2d 325 (1984).

In the present case, Susan Morse, a licensed clinical social worker at a state facility for children and adolescents who are emotionally and psychologically impaired, testified at the *Jarzbek* hearing, which was held August 9, 1999. The victim was a resident at the facility from September, 1998, to July, 1999. Morse testified that she worked primarily with adolescents and that during her lengthy career in counseling, she worked closely with approximately sixty to eighty children who were victims of sexual abuse. She testified that in most cases, children are reluctant to give detailed descriptions of the abuse. She explained that in her opinion, it often is necessary to ensure that the child feels that he or she is in a safe environment and that the child has developed a rapport with the interviewer.

With respect to the victim, Morse testified that she saw her daily, but had individual therapy sessions with her twice a week until she was transferred to another unit. She testified that the victim had nightmares, including nightmares about court and about the defendant retaliating against her.[5] Morse further testified that when the prospect of going to court arose, the victim would act out, sometimes physically. Morse spoke with the victim six weeks prior to the *Jarzbek* hearing, and

[5] Morse testified: "Because we knew when she first came into the hospital that this was an open court case, and she knew that she would have to be coming to court. Or that somehow this would come to court, and she had a lot of fears and worries and concerns about that. . . . She has said directly to me that she is very afraid of having to come to court. She is very afraid of having ever to face [the defendant], and she is afraid that somehow he will retaliate against her."

testified that the victim continued to have nightmares about the defendant and testifying in court. She testified that the victim had stated that she hoped she could videotape her testimony, and that if she had to testify in front of the defendant, "I would be very afraid and I don't think I could do it."

Morse testified that the victim "tested in the borderline range of intellectual functioning. So, you really can't compare her to an average fifteen year old because she is borderline, which means that her cognitive functioning is a little bit above what would be considered mildly mentally retarded." Furthermore, on the basis of the victim's development and behavior, Morse testified that she is "[e]motionally and socially . . . much younger than the average fifteen year old." Emotionally, she is "eight to eleven years old." Morse further testified that the victim's reactions to stressors were disproportionate to the situation and how other children the same age would act under similar circumstances. In some instances, the victim would regress to such a young age as to suck her thumb and curl up in a fetal position. Finally, Morse testified that those behaviors—acting out, exhibiting increased anxiety and regression— would result when the issues of sexuality or of coming to court and testifying before the defendant were raised.

We conclude that under the circumstances, the state met its burden of proving a compelling need by clear and convincing evidence. The court found, and the evidence supports the finding, that "the child does not have the mental or social or emotional abilities of a child twelve years or older." From the facts adduced at the *Jarzbek* hearing, it is reasonable to conclude that in addition to the victim's suffering further harm and trauma, it was highly probable that had the victim been required to testify in court in front of the defendant, the truth seeking function of the court would have been undercut. We conclude that the victim's feelings of intimidation

and fear of the defendant compounded by developmental delays and her precarious emotional state likely would not have produced reliable testimony.

## B

The defendant also argues that a proper reading of § 54-86g does not permit the testimony of a sexual assault victim to be videotaped if the victim is older than twelve at the time of the videotaping. The defendant argues, despite the plain language of the statute, that the legislative history requires that conclusion.[6] The state, in response, argues that the plain language of the statute provides that the victim's testimony may be videotaped if, at the time of the alleged abuse, the child was twelve or younger, and, thus, the statute applies in the present case. Alternatively, the state submits that the statute permits, and the legislative history supports, videotaping of the testimony of children older than twelve if the court, in its discretion, finds that there are special circumstances warranting such videotaping.

---

[6] The defendant's most persuasive argument in that regard relies on Representative William L. Wollenberg's statement clarifying his interpretation of the legislation with respect to whether the age limit applied to the time of the offense or the time of the testimony: "I suppose if the case went on and on for some reason that seven or eight years later we could have a 19 or 20 year old trying to invoke this and I don't think that makes any good sense and perhaps under the letter of the law rather than the spirit, after 12, perhaps they would not be allowed into the video situation . . . ." 28 H.R. Proc., Pt. 31, 1985 Sess., p. 11,337, remarks of Representative William L. Wollenberg.

We note, however, that Representative Wollenberg further noted: "And I don't think it makes sense after 12 *unless there are some extenuating circumstances and in that case the judge can make the decision and also make a decision upon how much weight they're going to give it and so on.* But I think 12 is the cutoff under the bill and I think that's right." (Emphasis added.) Id.

Even if we were to conclude that the statute is ambiguous and it is necessary to look to the legislative history, the court's decision was proper. The legislature did not intend the age limit to be an absolute bar; rather the decision to videotape a child victim's testimony was left to the court's discretion.

The defendant's claim raises an issue of statutory construction over which our review is plenary. *State* v. *Russo*, 259 Conn. 436, 447, 790 A.2d 1132 (2002). "We are obligated to interpret the legislative meaning inherent in the statutory enactment. . . . Where the language used in a statutory enactment is clear and unambiguous, we assume that the words themselves express the legislature's intent and there is no need to look further for interpretative guidance. . . . We are bound to interpret legislative intent by referring to what the legislative text contains, not by what it might have contained. . . . We will not read into clearly expressed legislation provisions which do not find expression in its words. (Internal quotation marks omitted.) *Tower* v. *Miller Johnson, Inc.*, 67 Conn. App. 71, 78, 787 A.2d 26 (2001). "[I]t is axiomatic that the process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *State* v. *Russo*, supra, 447–48. Section 54-86g provides in relevant part: "In any criminal prosecution of an offense involving assault, sexual assault or abuse of a child twelve years of age or younger . . . ."

We conclude that the plain language of the statute is unambiguous. The statute refers to the child's age at the time of the offense and makes no reference to the child's age at the time testimony is given. "We are constrained to read a statute as written . . . and we may not read into clearly expressed legislation provisions which do not find expression in its words . . . ." (Citation omitted; internal quotation marks omitted.) *Giaimo* v. *New Haven*, 257 Conn. 481, 494, 778 A.2d 33

(2001). We conclude that the statute gives the court the discretion to permit a child to testify via videotape if the defendant (1) is charged with assault, sexual assault or abuse of the child and (2) the alleged act or acts were perpetrated against the child when he or she was twelve years of age or younger. Furthermore, the court had found that the child witness did not have the social or emotional abilities of a child twelve years of age or older. We therefore conclude that the court properly permitted the videotaping of the victim's testimony outside the presence of the defendant.

## III

The defendant finally claims that the court improperly denied his motion to recall the victim as a witness. As a result, the defendant claims, his constitutional rights were violated, specifically, his right to confront and to cross-examine the witnesses against him.[7] We are not persuaded.

As described in part I, the defendant subpoenaed certain documents from the department and a residential treatment facility. The documents were reviewed in camera, and on the morning of the victim's testimony, the parties were given certain pages of that material. During the course of trial, the department handed over additional documents that it inadvertently had withheld. Again, the court reviewed them in camera and released some of them to the parties prior to opening

[7] The defendant also claims that his right to trial by an impartial jury and his right to the presumption of innocence were infringed. The defendant, however, failed to brief those claims. "The parties may not merely cite a legal principle without analyzing the relationship between the facts of the case and the law cited. . . . [A]ssignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court. . . . Where the parties cite no law and provide no analysis of their claims, we do not review such claims." (Internal quotation marks omitted.) *Baris* v. *Southbend, Inc.*, 68 Conn. App. 546, 550–51, 791 A.2d 713 (2002). We therefore consider those claims abandoned.

arguments. The defendant made a motion to recall the victim as a witness.

The newly released documents contained statements indicating that after the alleged incidents of sexual abuse, the victim had a problem with lying and stealing, and was taking several medications during the course of her treatment. The defendant argues on appeal that as a result of the court's denial of his motion to recall the victim as a witness, he was unable to impeach her with respect to (1) her lying and stealing, including her foster mother's disbelief of the allegations of sexual abuse, and (2) the effect of the medication on her ability to recall events.

The defendant had sought to recall the victim to question her about her alleged lying; however, he did not raise the issue of the effect of her medication on her ability to remember events before the court. In denying the defendant's request to recall the victim, the court first noted that further cross-examination of her with respect to her foster mother's beliefs would not produce anything different from her prior testimony. Moreover, the defendant would be able to elicit testimony from the foster mother herself.[8] Additionally, the court concluded that the allegations of lying in general and stealing were irrelevant. The court noted that the victim had testified that she had lied to police, but ruled that the incidents of lying and stealing in the newly released documents had occurred *after* the alleged sexual abuse and did not relate to her claim of sexual abuse or to the events relating to the trial. Again, the court indicated that it might allow the defendant to call other witnesses who could attest to the defendant's behavior.

"The trial court has broad discretion in determining whether to permit a witness to be recalled. See *State*

---

[8] When the foster mother testified, the defendant did not examine her in that respect.

v. *Reed*, 174 Conn. 287, 304, 386 A.2d 243 (1978); *State* v. *Vandemark*, 77 Conn. 201, 206, 58 A. 715 (1904). In determining whether the trial court abused its discretion, every reasonable presumption should be given in favor of the trial court's ruling. *State* v. *Mitchell*, 8 Conn. App. 598, 604, 513 A.2d 1268, cert. denied, 201 Conn. 810, 516 A.2d 887 (1986)." *State* v. *Arroyo*, 13 Conn. App. 687, 692, 539 A.2d 581, cert. denied, 208 Conn. 805, 545 A.2d 1103 (1988). We are not persuaded that the court abused its discretion.

"In order to comport with the constitutional standards embodied in the confrontation clause, the trial court must allow a defendant to expose to the jury facts from which [the] jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness. . . . In determining whether a defendant's right of cross-examination has been unduly restricted, we consider the nature of the excluded inquiry, whether the field of inquiry was adequately covered by other questions that were allowed, and the overall quality of the cross-examination viewed in relation to the issues actually litigated at trial. . . . Although it is axiomatic that the scope of cross-examination generally rests within the discretion of the trial court, [t]he denial of all meaningful cross-examination into a legitimate area of inquiry fails to comport with constitutional standards under the confrontation clause." (Internal quotation marks omitted.) *State* v. *Hall*, 66 Conn. App. 740, 754, 786 A.2d 466 (2001), cert. denied, 259 Conn. 906, 789 A.2d 996 (2002).

A

We cannot conclude that the court deprived the defendant of his constitutional right to cross-examine the victim by denying his motion to recall her as a witness. The record reveals that the defendant had the discharge summary from the residential treatment facil-

ity as early as August 9, 1999, when the court conducted a hearing to determine whether the victim's testimony should be videotaped. The summary reveals that the victim was referred to the facility, in part, due to "excessive lying" and "manipulation, stealing." The report further indicates that the victim "lash[ed] out at [her foster mother] in the form of accusations of physical punishment." None of the later released documents provide any further detail as to any specific instances of lying or stealing that the defendant could have questioned the victim about. Thus, the defendant was afforded an opportunity to cross-examine the victim fully and fairly concerning her credibility. In fact, the defendant elicited testimony from the victim that she had lied to the police. At no time during the course of cross-examination, however, did the defendant question her about her alleged lying, stealing or false accusations of physical abuse as suggested by the discharge summary. "A defendant's right to cross-examine is not infringed if he fails to pursue a line of inquiry open to him. The test is whether the opportunity for cross-examination existed, not whether full use of such opportunity was made." *State* v. *Vasquez*, 66 Conn. App. 118, 131, 783 A.2d 1183, cert. denied, 258 Conn. 941, 786 A.2d 428 (2001). The defendant additionally had an opportunity to explore the extent of the victim's lying and stealing through the examination of other witnesses, such as the victim's foster mother and mental health care providers.

Having determined that the constitutional standard was satisfied, we further conclude that the defendant has not satisfied his burden of showing that the restriction on his cross-examination of the victim was an abuse of discretion. See *State* v. *Hall*, supra, 66 Conn. App. 755. "To establish that the court abused its discretion, the defendant bears the burden of demonstrating that the restrictions that the court imposed on the cross-examination were clearly prejudicial. . . . Once we

conclude that the court's ruling on the scope of cross-examination is not constitutionally defective, we will apply every reasonable presumption in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." (Citation omitted.) *State* v. *Williams*, 65 Conn. App. 449, 459, 783 A.2d 53, cert. denied, 258 Conn. 927, 783 A.2d 1032 (2001). The defendant has not shown that he was prejudiced by his inability to recall the victim as a witness and to question her on those matters.

B

With respect to the defendant's claim that he was deprived of his right to cross-examine the victim about the effect of her medications on her testimony, we must first address whether that claim is reviewable on appeal, as the defendant did not properly preserve the issue at trial.[9] The defendant seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989),[10] or alternatively, under the plain error doctrine.[11]

___

[9] The defendant argues that his claim is preserved by virtue of his motion to recall the witness. We do not agree. "This court reviews rulings solely on the ground on which the party's objection is based. . . . [A]rticulating the basis of the objection alert[s] the court to any claims of error while there is still an opportunity for correction." (Citation omitted; internal quotation marks omitted.) *State* v. *Prioleau*, 235 Conn. 274, 310, 664 A.2d 743 (1995).

[10] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

[11] "Pursuant to Practice Book § 60-5, this court may reverse or modify the decision of the trial court if it determines that the factual findings are clearly erroneous in view of the evidence and pleadings in the whole record, or

Because the record is adequate for review and the issue raised implicates a fundamental right, we will review the defendant's claim. We conclude, however, that the defendant cannot establish that a constitutional violation clearly exists and that it clearly deprived him of a fair trial. The defendant therefore cannot prevail on his claim. We also conclude that his claim does not merit plain error review.

In *State* v. *Person*, 20 Conn. App. 115, 564 A.2d 626 (1989), aff'd, 215 Conn. 653, 577 A.2d 1036 (1990), cert. denied, 498 U.S. 1048, 111 S. Ct. 756, 112 L. Ed. 2d 776 (1991), this court stated that "[t]he capacity of a witness to observe, recollect and narrate an occurrence is a proper subject of inquiry on cross-examination. . . . Consumption of alcohol or drugs obviously can impair an individual's ability to observe and recall accurately . . . ." (Citation omitted.) Id., 121–22.

We first note that "under our case law, [for impeachment purposes] there are two points at which a witness' possible mental unsoundness is relevant: at or around the time of trial or of the incident about which he is to testify." (Internal quotation marks omitted.) *State* v. *Rosado*, 52 Conn. App. 408, 419, 726 A.2d 1177 (1999). In this case, there is no evidence that the victim was taking medication at the time of the incidents at issue or at the time she testified. Although the evidence does indicate that she was taking some prescribed medications as part of her treatment, the record reveals that despite opportunities to do so, the defendant made no

that the decision is otherwise erroneous in law. . . . The court may in the interests of justice notice plain error. . . . We recently restated that [t]o prevail under the plain error doctrine, the defendant must demonstrate that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice. . . . This doctrine is not implicated and review of the claimed error is not undertaken unless the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *State* v. *Hair*, 68 Conn. App. 695, 704–705, 792 A.2d 179, cert. denied, 260 Conn. 925, 797 A.2d 522 (2002).

effort to question other witnesses about the victim's medications and the effect they could have on the victim's testimony. We conclude that the defendant's constitutional right to confrontation has been satisfied because he was given ample opportunity "to expose to the jury the facts from which [the] jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." (Internal quotation marks omitted.) *State* v. *Williams,* supra, 65 Conn. App. 458.

The judgment is affirmed.

In this opinion the other judges concurred.