STATE OF CONNECTICUT *v.* SHANNON ROGELSTAD
(AC 21493)

Foti, Mihalakos and Dranginis, Js.

---

18

Argued April 22—officially released October 15, 2002

*Jon L. Schoenhorn*, for the appellant (defendant).

*Joy K. Fausey*, deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *James R. Dinnan*, senior assistant state's attorney, for the appellee (state).

*Opinion*

MIHALAKOS, J. The defendant, Shannon Rogelstad, appeals from the judgment of conviction, rendered after

a jury trial, of risk of injury to a child in violation of General Statutes (Rev. to 1999) § 53-21 (1)[1] and assault in the third degree in violation of General Statutes § 53a-61.[2] On appeal, the defendant claims that the trial court improperly (1) restricted her right to confront and to cross-examine witnesses, (2) denied her the right to present a defense, (3) allowed the prosecutor to engage in prosecutorial misconduct and (4) refused to consider her motion for a new trial. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On July 22, 1999, the defendant stabbed the victim, her nine year old son, Erik Gilbert (Erik), in the back with a pair of opened scissors. The stabbing resulted in two superficial puncture wounds to Erik's lower back. Following the stabbing, the defendant cleaned and dressed the wound. Within the next day or two, Erik went swimming and reported the incident to his day care provider and then to his father, Wayne Gilbert (Wayne).[3] A police investigation followed.

In a long form information, the defendant was charged with risk of injury to a child in violation of § 53-21 (1) and assault in the second degree in violation of General Statutes § 53a-60 (a) (2). The trial com-

---

[1] General Statutes (Rev. to 1999) § 53-21 provides in relevant part: "Any person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child . . . shall be guilty of a class C felony."

[2] General Statutes § 53a-61 (a) provides: "A person is guilty of assault in the third degree when: (1) With intent to cause physical injury to another person, he causes such injury to such person or to a third person; or (2) he recklessly causes serious physical injury to another; or (3) with criminal negligence, he causes physical injury to another person by means of a deadly weapon, a dangerous instrument or an electronic defense weapon."

[3] Shortly before the incident, the defendant and Wayne finalized a contentious divorce. The dissolution action was not a part of the record.

menced on March 15, 2000, at which Erik testified that he was wounded while playing on a slide at a local McDonald's restaurant. The jury returned a verdict of guilty as to the first count and a verdict of guilty of the lesser included offense of assault in the third degree on the second count. The defendant was sentenced to three years imprisonment, execution suspended, and three years probation with special conditions. On March 28, 2000, the defendant renewed her previous oral motion for a judgment of acquittal and for a new trial. On June 9, 2000, the defendant filed a motion for a new trial on the basis of newly discovered evidence. The trial court issued its memorandum of decision denying the defendant's motion for a new trial on December 7, 2000. This appeal followed.

## I

The defendant first argues that the court unfairly restricted her right to confront and to cross-examine witnesses. Specifically, she claims that the denial of her efforts to explore the matter of the influence that her ex-husband exerted on Erik and the investigation constituted a deprivation of the right to confront and to cross-examine witnesses under the constitution of Connecticut and the United States constitution.[4] In addition, she argues that the court improperly denied her the right to present a defense by prohibiting evidence concerning Wayne's statements and efforts to deprive her of custody of her son. Because both claims implicate the defendant's rights under the sixth amendment to the United States constitution, we will address them together.

The defendant concedes that she did not argue before the court that her sixth amendment rights were violated.

[4] Because the defendant has failed to present an independent state constitutional analysis, we limit our review to her federal constitutional claim. See *State* v. *DeJesus*, 260 Conn. 466, 480 n.11, 797 A.2d 1101 (2002).

She now seeks review under the doctrine set forth in *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[5] Because the record is adequate for review and the issues raised involve a fundamental right, we will review the defendant's claim under *Golding*. See *State* v. *Wegman*, 70 Conn. App. 171, 190, 798 A.2d 454, cert. denied, 261 Conn. 918, 806 A.2d 1058 (2002). The defendant, however, cannot prevail under the third prong of *Golding* because she has failed to establish that a constitutional violation clearly exists and that it clearly deprived her of a fair trial.

"The sixth amendment to the United States constitution guarantees the right of an accused in a criminal prosecution to confront and cross-examine the witnesses against him." *State* v. *Valentine*, 255 Conn. 61, 70, 762 A.2d 1278 (2000). "The primary interest secured by confrontation is the right to cross-examination . . . and an important function of cross-examination is the exposure of a witness' motivation in testifying." (Internal quotation marks omitted.) *State* v. *Hall*, 66 Conn. App. 740, 753, 786 A.2d 466 (2001), cert. denied, 259 Conn. 906, 789 A.2d 996 (2002). "Cross-examination to elicit facts tending to show motive, interest, bias and prejudice is a matter of right and may not be unduly restricted. . . . However, [t]he [c]onfrontation [c]lause guarantees only an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the

---

[5] Under *State* v. *Golding*, supra, 213 Conn. 239–40, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) Id. "In the absence of any one of these conditions, the defendant's claim will fail." Id., 240.

defense might wish." (Emphasis in original; internal quotation marks omitted.) *State* v. *Price*, 61 Conn. App. 417, 428, 767 A.2d 107, cert. denied, 255 Conn. 947, 769 A.2d 64 (2001).

"[T]o comport with the constitutional standards embodied in the confrontation clause, the trial court must allow a defendant to expose to the jury facts from which [the] jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness. . . . In determining whether a defendant's right of cross-examination has been unduly restricted, we consider the nature of the excluded inquiry, whether the field of inquiry was adequately covered by other questions that were allowed, and the overall quality of the cross-examination viewed in relation to the issues actually litigated at trial." (Internal quotation marks omitted.) *State* v. *Wegman*, supra, 70 Conn. App. 187.

Again, the confrontation clause does not guarantee a defendant's right to engage in unfettered cross-examination. See *State* v. *Valentine*, supra, 255 Conn. 71. Only relevant evidence may be elicited through cross-examination. See id. "The trial court has wide discretion to determine the relevancy of evidence and the scope of cross-examination. Every reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion. . . . Furthermore, [t]o establish an abuse of discretion, [the defendant] must show that the restrictions imposed upon [the] cross-examination were clearly prejudicial. . . . The proffering party bears the burden of establishing the relevance of the offered testimony. Unless such a proper foundation is established, the evidence . . . is irrelevant." (Citations omitted; internal quotation marks omitted.) Id., 69–70.

"Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue.

. . . [E]vidence need not exclude all other possibilities [to be relevant]; it is sufficient if it tends to support the conclusion [for which it is offered], even to a slight degree." (Internal quotation marks omitted.) *State* v. *Johnson*, 67 Conn. App. 299, 305–306, 786 A.2d 1269 (2001), cert. denied, 259 Conn. 918, 791 A.2d 566 (2002). "It is not logical relevance alone, however, that secures the admission of evidence. Logically relevant evidence must also be legally relevant . . . that is, not subject to exclusion for any one of the following prejudicial effects: (1) where the facts offered may unduly arouse the jury's emotions, hostility or sympathy, (2) *where the proof and answering evidence it provokes may create a side issue that will unduly distract the jury from the main issues,* (3) where the evidence offered and the counterproof will consume an undue amount of time, and (4) where the defendant, having no reasonable ground to anticipate the evidence, is unfairly surprised and unprepared to meet it." (Citation omitted; emphasis added; internal quotation marks omitted.) *State* v. *Joly*, 219 Conn. 234, 260–61, 593 A.2d 96 (1991).

We first address whether the defendant has successfully established that a constitutional violation clearly exists and clearly deprived her of a fair trial with regard to her cross-examination of Erik. Defense counsel posited, inter alia, to Erik: "Did your father encourage you to pursue this complaint against your mother?" The prosecutor objected to this line of questioning, and the court sustained the objection. The defendant now argues that because "the entire case against the defendant was dependent upon Erik's out-of-court statements, in the face of [her and Erik's] categorical denials in court, the need to demonstrate [Wayne's] motives and influence were paramount. Instead, the court precluded the only evidence showing that Erik was influenced and encouraged to make false allegations against his

mother by her hostile and vindictive ex-husband." This argument is misplaced.

During her cross-examination of *Erik*, the defendant attempted to show *Wayne's* motives and influence. Neither Wayne's motives, nor his influences, were at issue in this case. Thus, such testimony and evidence, if admitted, would have created a side issue that would have distracted the jury from the issue of whether the defendant stabbed her son with a pair of scissors. Therefore, the court properly excluded the testimony as irrelevant.

In addition, the defendant fully delved into Erik's motives and credibility during cross-examination. After categorically denying that his mother had stabbed him, Erik admitted to having changed his story several times. For example, Erik testified that he went to day care the next day, and "she saw the scab and I was really mad at my mom then for ripping [a flag he had made for her], and I said that my mom stabbed me because I was mad." At one point, he told his physician that he had walked three miles to his day care that day. Erik also testified that he told the police that his mother had stabbed him twice with the open scissors, yet there were only two puncture wounds.

Because the proffered cross-examination was irrelevant and Erik's motives were explored thoroughly through proper questioning, the defendant's right to cross-examination was not unduly hampered. We conclude that the court's exclusion of the line of questioning regarding Wayne's motives was proper and did not unfairly restrict the defendant's right to confront the witnesses against her. Therefore, the defendant's claim fails to satisfy the third prong of *Golding*.

We now turn to whether the court's preclusion of any testimony regarding Wayne's hostility toward the defendant denied her the right to present a defense.

The defendant argues that "[i]t is clear in this case that the court determined that the only defense that would be permitted was limited to events surrounding the manner in which Erik received his injury, and the court would permit no evidence demonstrating that her ex-husband was a vindictive and manipulative man who would use his mentally ill son to make false accusations against her." At trial, the defendant proffered evidence that Wayne was the president of the union that represented the Hamden police department, and was contesting custody and child support payments to the defendant. The line of questioning was either precluded or stricken from the record.

As we have previously stated, the court has wide discretion to determine the relevancy and scope of cross-examination, and we will not disturb the court's ruling absent a clear abuse of that discretion. See *State v. Valentine*, supra, 255 Conn. 69–70. In addition, the proffering party must establish the relevancy of the proffered testimony. See id.

The court precluded the defendant's testimony regarding her relationship with Wayne and the attendant divorce. The court ruled: "We're not trying any divorce, however contentious it may or may not have been, I don't know. That's not relevant." We reiterate that the admission of such testimony would create a side issue that would unduly distract the jury from deciding whether the defendant had stabbed her son and was, therefore, irrelevant. Because neither the divorce nor Wayne's hostility toward the defendant had any bearing on whether the defendant stabbed her son, the court properly precluded the evidence.

Whether Wayne manipulated Erik into concocting the story that his mother had stabbed him relates directly to Erik's credibility, not to whether the defendant stabbed him. Credibility is within the sole province of the fact

finder. The jury found that Erik's testimony at trial was not credible and found that the defendant, indeed, had stabbed her son in the back with a pair of scissors. It is not for this court to second-guess that determination. Therefore, the defendant's first two claims fail to satisfy the third prong of *Golding*.

## II

The defendant next claims that the court improperly allowed the prosecutor to engage in misconduct during closing argument. Specifically, she argues that the prosecutor improperly vouched for or attacked the credibility of witnesses, injected unproven facts and made personal attacks on defense counsel. We are not persuaded.

The defendant concedes that she did not properly preserve her claim for appeal. Once again, she seeks review under *State* v. *Golding*, supra, 213 Conn. 239–40.[6] "It is well established that [w]e will not afford *Golding* review to [unpreserved] claims of prosecutorial misconduct where the record does not disclose a pattern of misconduct pervasive throughout the trial or conduct that was so blatantly egregious that it infringed on the defendant's right to a fair trial." (Internal quotation marks omitted.) *State* v. *Perry*, 58 Conn. App. 65, 69, 751 A.2d 843, cert. denied, 254 Conn. 914, 759 A.2d 508 (2000). We now review the closing arguments to

---

[6] The defendant also seeks plain error review pursuant to Practice Book § 60-5. "The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . . Plain error review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . Plain error is a doctrine that should be invoked sparingly. . . . A party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice." (Internal quotation marks omitted.) *State* v. *Smith*, 70 Conn. App. 393, 397 n.3, 797 A.2d 1190, cert. denied, 261 Conn. 924, 806 A.2d 1063 (2002). Because the defendant has neglected to analyze her plain error claim, she has failed to demonstrate a manifest injustice.

determine if a pattern of misconduct existed or if the conduct was so egregious as to infringe on the defendant's right to a fair trial.

"[P]rosecutorial misconduct can occur in the course of closing argument. . . . When presenting closing arguments, as in all facets of a criminal trial, the prosecutor, as a representative of the state, has a duty of fairness that exceeds that of other advocates." (Citations omitted; internal quotation marks omitted.) *State* v. *Copas*, 252 Conn. 318, 336, 746 A.2d 761 (2000). "Nevertheless, [i]n addressing the jury, [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument. . . . Thus, the privilege of counsel in addressing the jury should not be too closely narrowed or unduly hampered . . . . Ultimately, therefore, the proper scope of closing argument lies within the sound discretion of the trial court." (Citations omitted; internal quotation marks omitted.) Id., 337.

"We do not scrutinize each individual comment in a vacuum, but rather we must review the comments complained of in the context of the entire trial. . . . It is in that context that the burden [falls] on the defendant to demonstrate that the remarks were so prejudicial that he was deprived of a fair trial and the entire proceedings were tainted." (Internal quotation marks omitted.) *State* v. *Holmes*, 64 Conn. App. 80, 90–91, 778 A.2d 253, cert. denied, 258 Conn. 911, 782 A.2d 1249 (2001).

"A prosecutor is not only an officer of the court, like every other attorney, but is also a high public officer, representing the people of the State, who seek impartial justice for the guilty as much as for the innocent. . . . By reason of his [or her] office, [the prosecutor] usually exercises great influence upon jurors. [The prosecu-

tor's] conduct and language in the trial of cases in which human life or liberty are at stake should be forceful, but fair, because he [or she] represents the public interest, which demands no victim and asks no conviction through the aid of passion, prejudice or resentment. If the accused be guilty, he [or she] should none the less be convicted only after a fair trial, conducted strictly according to the sound and well-established rules which the laws prescribe. While the privilege of counsel in addressing the jury should not be too closely narrowed or unduly hampered, it must never be used as a license to state, or to comment upon, or to suggest an inference from, facts not in evidence, or to present matters which the jury has no right to consider." (Internal quotation marks omitted.) *State* v. *Singh*, 259 Conn. 693, 701–702, 793 A.2d 226 (2002). Our review of the transcripts in this case reveals that the defendant has failed to carry her burden in establishing a violation that would satisfy the requirements of *Golding* or plain error review.

The defendant first argues that the "prosecutor commented directly on the credibility of the state's chief witness and offered his personal opinion about the lack of merit to the defendant's theory of defense."[7] We

---

[7] The prosecutor made the following comments to which the defendant now objects: "We went to McDonald's, and this is Ingrid [Rogelstad-Howe, Erik's sister] testifying, I was with him there, he never mentioned being hurt, I was watching him, I never saw him being hurt, and, in fact, when I tried to tell him that it was time to leave, it took [me] fifteen minutes to coax him to get out of the play area. He was having that much fun. Having that much fun. *Having that much fun after a wound that he was stabbed in the back and it was bleeding. I don't think that is credible. . . . [S]he's going to let her son go over [to her ex-husband] with these wounds in his back without any explanation to this guy, this guy that supposedly is terrible. I don't think so . . . .*

\* \* \*

"*And, Mr. Gilbert orchestrating this, I think you can see right through that . . . . Erik has been with his father for quite some time now, but it's his father that brought it to the police's attention about his changing his story. This guy was such a . . . Machiavellian . . . you think Erik can come in here and testify the way he did? I don't think so.*" (Emphasis added.)

agree with the defendant that the prosecutor improperly stated his opinion regarding the credibility of the witnesses when, directly after discussing the credibility of the testimony, he stated, "I don't think so." This clearly improper remark was, however, made only twice during the entire trial. Because it was fairly isolated, and was not part of an egregious pattern of misconduct, the defendant falls short of meeting her burden. See *State* v. *Perry*, supra, 58 Conn. App. 70–71.

The defendant next argues that the prosecutor included in his summation facts not in evidence.[8] We disagree.

"A prosecutor, in fulfilling his duties, must confine himself to the evidence in the record. . . . [A] lawyer shall not . . . [a]ssert his personal knowledge of the facts in issue, except when testifying as a witness. . . . Statements as to facts that have not been proven amount to unsworn testimony, which is not the subject

---

[8] The prosecutor made the following comments to which the defendant now objects: "[Erik's] parents are divorced. By all accounts, this was a terrible divorce. And Erik unfortunately was exposed to some of that or all of that between his parents over the years before they got divorced and even afterward. I don't dispute that one iota. *It's terrible that children have to go through that, and shame on anybody that allows a child to go through that, both parties.* But that's not the issue in this case. The issue isn't the divorce or the animosity that Erik's parents have against each other; the issue is what happened on that day.

* * *

"This is becoming, perhaps, more serious than [Erik] thought his telling the truth was going to be. What happened, ladies and gentlemen, is Erik, I'm sure, loves his mother. He was nine years old at the time. I'm sure he still loves his mother. *No matter how dysfunctional families in our society may be, children want to be normal, children want to keep the family together.* The children want to have a relationship with both parents, whether they're married or not and, unfortunately for Erik, they're not in this case, but he . . . doesn't want anything bad to happen to his mother.

* * *

"I'm not a psychologist, ladies and gentlemen. *It has been over seventeen years since I've been a social worker.* But use your common sense as to what those folks are saying and what value that is." (Emphasis added.)

of proper closing argument." (Internal quotation marks omitted.) *State* v. *Singh*, supra, 259 Conn. 717. "Our case law reflects the expectation that jurors will not only weigh conflicting evidence and resolve issues of credibility as they resolve factual issues, but also that they will consider evidence on the basis of their common sense. Jurors are not expected to lay aside matters of common knowledge or their own observation and experience of the affairs of life, but, on the contrary, to apply them to the evidence or facts in hand, to the end that their action may be intelligent and their conclusions correct." (Internal quotation marks omitted.) *State* v. *Guadalupe*, 66 Conn. App. 819, 826, 786 A.2d 494 (2001), cert. denied, 259 Conn. 907, 789 A.2d 996 (2002).

We conclude that the prosecutor's comments regarding divorce were merely an appeal to the jury's common sense and life experiences. Therefore, the prosecutor's comments regarding divorce were not improper.[9]

The defendant's next contention regarding the prosecutor's summation is that the prosecutor waged a personal attack against defense counsel.[10] Specifically, she

---

[9] Although we do not believe that the prosecutor should have referred to his prior experience as a social worker, it was an isolated comment.

[10] The prosecutor made the following comments to which the defendant now objects: "This isn't a divorce. I'm going to tell you . . . I'm not part of that, thank God I'm not a part of that. I'm going to assume that [defense counsel] is 100 percent true that this is a terrible thing, divorce. But that's not what this case is about, and don't believe that for one minute. *And [defense counsel] can get up here and rant and rave about someone being a coward for not taking the [witness] stand. Who is the coward for not putting him on the [witness] stand to get out legitimate evidence if, in fact, there was any? [Defense counsel] is an attorney, he knows what he is doing, he did that for a reason, so he can get up here and just tell you tall tales, to coin a phrase that Erik said when he was on the [witness] stand.* Let me get up there and give them a tall tale about what's going on in some other courtroom at some other time where Mr. Wayne Gilbert is some sort of Machiavellian presence in dictating what the Hamden police department does. . . . *He doesn't want you to be sympathetic for her. Bunk. Bunk. Bring up everything that he just said about the financial strain and emotional problems, you know, having to hire him. That's exactly what he's trying to use, is sympathy . . . .*" (Emphasis added.)

argues that the prosecutor "indirectly called [counsel] a liar and coward, and the state dismissed his admonishment not to feel sorry for his client as 'bunk' while simultaneously suggesting that defense counsel's motives were improper."

"The parameters of the term zealous advocacy are also well settled. The prosecutor may not express his own opinion, directly or indirectly, as to the credibility of the witnesses. . . . Nor should a prosecutor express his opinion, directly or indirectly, as to the guilt of the defendant. . . . Such expressions of personal opinion are a form of unsworn and unchecked testimony, and are particularly difficult for the jury to ignore because of the prosecutor's special position. . . . Moreover, because the jury is aware that the prosecutor has prepared and presented the case and consequently, may have access to matters not in evidence . . . it is likely to infer that such matters precipitated the personal opinions." (Internal quotation marks omitted.) *State* v. *Singh*, supra, 259 Conn. 713.

"[T]he prosecutor is expected to refrain from impugning, directly or through implication, the integrity or institutional role of defense counsel." (Internal quotation marks omitted.) *State* v. *Chasse*, 51 Conn. App. 345, 358, 721 A.2d 1212 (1998), cert. denied, 247 Conn. 960, 723 A.2d 816 (1999). "It does not follow [however] that every use of rhetorical language or device is improper. . . . The occasional use of rhetorical devices is simply fair argument." (Internal quotation marks omitted.) *State* v. *Brown*, 256 Conn. 291, 310, 772 A.2d 1107, cert. denied, 534 U.S. 1068, 122 S. Ct. 670, 151 L. Ed. 2d 584 (2001).

Although we do not condone the prosecutor's comments directed at defense counsel, we cannot conclude that the comments rose to a level such that they deprived the defendant of a fair trial. We, therefore,

decline to review the defendant's claims pursuant to *Golding*.

The defendant's final argument is that the prosecutor, while referring to Erik's written and signed statement to the police, improperly commented that "its based upon [the fact that] the court has found the reliability of such a statement."[11] We disagree. The statement was admitted pursuant to *State* v. *Whelan*, 200 Conn. 743, 753, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986).

Pursuant to *State* v. *Whelan*, supra, 200 Conn. 753, a prior inconsistent statement is admissible for substantive purposes, rather than only for impeachment purposes, if the following four requirements are met: "(1) the statement must be in writing; (2) the statement must be signed by the declarant; (3) the declarant must possess personal knowledge of the facts contained therein; and (4) the declarant must testify at trial and be subject to cross-examination." *State* v. *Meehan*, 260 Conn. 372, 376 n.6, 796 A.2d 1191 (2002). "Although the requirement that prior statements be written and signed by the declarant is not an absolute guaranty of reliability, it does provide significant assurance of an accurate rendition of the statement and that the declarant realized it would be relied upon." *State* v. *Whelan*, supra, 754. Viewing the prosecutor's remark in its entirety, it

---

[11] The prosecutor made the following comments to which the defendant now objects: "So, that statement is not only allowed in for you to see that there was some other different version given, that can be allowed in for you, if you so choose, to determine that as substantive evidence not just . . . somehow impacting on Erik's testimony in court, but for substantive purposes, and *it's based upon what the court has found the reliability of such a statement.* [Erik] also gave all those other statements to people, none of those were sworn to and signed by him, so those don't come in for substantive purposes only, but for you folks to decide which is going to truly be more accurate, the statement to the police department that [Erik] told Detective [Pamela] Glasso on August 3 or what Erik said here in court in front of his mother in front of this courtroom." (Emphasis added.)

is clear that he was merely stating why the statement was admissible and why the jury could use it for substantive purposes. Such argument is not improper.

As a final matter, we review whether the prosecutor's conduct caused substantial prejudice to the defendant. In determining whether prosecutorial misconduct was so serious as to amount to a denial of due process, we consider several factors. "Included among those factors are the extent to which the misconduct was invited by defense conduct or argument . . . the severity of the misconduct . . . the frequency of the misconduct . . . the centrality of the misconduct to the critical issues in the case . . . the strength of the curative measures adopted . . . and the strength of the state's case." (Citations omitted; internal quotation marks omitted.) *State* v. *Whipper*, 258 Conn. 229, 262–63, 780 A.2d 53 (2001).

Our review of the record does not disclose a pattern of misconduct pervasive throughout the trial or conduct that was so egregious that it infringed on the defendant's right to a fair trial. The improper comments made by the prosecutor were infrequent and were not severe in nature. In addition, some of the prosecutor's comments were in direct response to the defendant's closing argument. Furthermore, the state presented overwhelming evidence against the defendant. On the basis of our review of the record, we conclude that the defendant has failed to demonstrate that she was deprived of a fair trial, and, therefore, her claim fails to satisfy the third prong of *Golding*.

## III

The defendant's final claim is that the court abused its discretion when it refused to consider her motion for a new trial. Specifically, she argues that the court improperly concluded that it lacked subject matter jurisdiction because she failed to bring a separate action

in accordance with General Statutes § 52-270. We conclude, albeit on ground different from those on which the trial court relied, that the court properly dismissed the defendant's motion for a new trial.

This court has previously noted that failure to properly bring a petition for a new trial implicates the court's subject matter jurisdiction. See, e.g., *State* v. *Servello*, 14 Conn. App. 88, 101–102, 540 A.2d 378, cert. denied, 208 Conn. 811, 545 A.2d 1107 (1988). Our Supreme Court has since clarified the distinction between a trial court's "jurisdiction" and its "authority to act" in *Amodio* v. *Amodio*, 247 Conn. 724, 727–29, 724 A.2d 1084 (1999) (explaining distinction between "jurisdiction" and "authority to act"), *Kim* v. *Magnotta*, 249 Conn. 94, 101–102, 733 A.2d 809 (1999) (statutory limitation on motions to open judgments contained in General Statutes § 52-212a not jurisdictional), and *Cantoni* v. *Xerox Corp.*, 251 Conn. 153, 161–62, 740 A.2d 796 (1999) (challenge alleging tribunal's action misconstrues its statutory authority is claim of statutory construction not jurisdictional).

"Subject matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it. . . . A court does not truly lack subject matter jurisdiction if it has competence to entertain the action before it. . . . Jurisdiction involves the power in a court to hear and determine the cause of action presented to it and its source is the constitutional and statutory provisions by which it is created." (Citations omitted; internal quotation marks omitted.) *State* v. *Carey*, 222 Conn. 299, 304–305, 610 A.2d 1147 (1992), on appeal after remand, 228 Conn. 487, 636 A.2d 840 (1994). "Once it is determined that a tribunal has authority or competence to decide the class of cases to which the action belongs, the issue of subject matter jurisdiction is resolved in favor of entertaining the action." (Internal quotation marks omitted.)

*O'Bryan* v. *O'Bryan*, 67 Conn. App. 51, 53, 787 A.2d 15 (2001), cert. granted on other grounds, 259 Conn. 911, 789 A.2d 995 (2002).

"Although related, the court's authority to act pursuant to a statute is different from its subject matter jurisdiction. The power of the court to hear and determine, which is implicit in jurisdiction, is not to be confused with the way in which that power must be exercised in order to comply with the terms of the statute." (Internal quotation marks omitted.) Id., 54. Furthermore, this court indulges every presumption in favor of jurisdiction. See id., 53–54.

Section 52-270 confers jurisdiction on the Superior Court to hear a defendant's claim for a new trial on the basis of newly discovered evidence. Practice Book § 42-55 implements the statutory right conferred on the defendant by General Statutes § 52-270. "Practice Book rules do not ordinarily define subject matter jurisdiction. General Statutes § 51-14 (a) authorizes the judges of the Superior Court to promulgate rules regulating pleading, practice and procedure in judicial proceedings . . . . Such rules shall not abridge, enlarge or modify any substantive right *nor the jurisdiction of any of the courts.*" (Emphasis added; internal quotation marks omitted.) *State* v. *Carey*, supra, 222 Conn. 307.

Our Supreme Court has observed that there may not be any examples of rules of practice governing criminal matters that affect subject matter jurisdiction. Id. "Even if a . . . Practice Book rule must be strictly construed and is mandatory, compliance with its requirements does not necessarily become a prerequisite to a court's subject matter jurisdiction." Id., 310; see also *State* v. *Myers*, 242 Conn. 125, 139 n.17, 698 A.2d 823 (1997); *LoSacco* v. *Young*, 210 Conn. 503, 508, 555 A.2d 986 (1989) (rule of practice not being constitutional or statutory mandate cannot be jurisdictional); *Blakeney* v.

*Commissioner of Correction,* 47 Conn. App. 568, 581, 706 A.2d 989 (prosecutor's failure to sign information, as required by rule of practice, not jurisdictional), cert. denied, 244 Conn. 913, 713 A.2d 830 (1998). Moreover, our rules of practice "reflect the courts' authority to prescribe rules to regulate their proceedings and facilitate the administration of justice as they deem necessary." (Internal quotation marks omitted.) *Young* v. *Young,* 249 Conn. 482, 495, 733 A.2d 835 (1999). Therefore, our role is to determine whether the court properly exercised its authority to act. See *Amodio* v. *Amodio,* supra, 247 Conn. 731.

"It is well established that to obtain a new trial on the ground of newly discovered evidence, a defendant must bring a petition under Practice Book § 42-55 . . . ." *State* v. *Legrande,* 60 Conn. App. 408, 419, 759 A.2d 1027 (2000), cert. denied, 255 Conn. 925, 767 A.2d 99 (2001). Practice Book § 42-55 provides that "[a] request for a new trial on the ground of newly discovered evidence shall be called a petition for a new trial and shall be brought in accordance with General Statutes § 52-270. The judicial authority may grant the petition even though an appeal is pending." A petition for a new trial properly is "instituted by a writ and complaint served on the adverse party; although such an action is collateral to the action in which a new trial is sought, it is by its nature a distinct proceeding." *State* v. *Asherman,* 180 Conn. 141, 144, 429 A.2d 810 (1980). "[A] different standard of review applies in these two separate procedures for seeking a new trial. To obtain a new trial through a [Practice Book § 42-55] petition, a defendant must overcome a 'strict standard' including a requirement that the newly discovered evidence be likely to produce a different result in a new trial." *State* v. *Jones,* 205 Conn. 723, 729, 535 A.2d 808 (1988).

In the present case, the defendant filed a supplemental motion for new trial on November 16, 2000. The

defendant neglected to serve a writ of summons and complaint in accordance with § 52-270, but merely filed the motion in the criminal case, pursuant to Practice Book §§ 42-53 and 42-55 and General Statutes § 52-270. In its detailed memorandum of decision dated December 7, 2000, the court dismissed the motion for lack of subject matter jurisdiction because the defendant did not institute a separate action in accordance with Practice Book § 42-55 and General Statutes § 52-270. We conclude that the defendant's failure to bring her claim in accordance with Practice Book § 42-55 did not deprive the court of subject matter jurisdiction. We further conclude that the court properly dismissed the defendant's improper motion because it lacked authority to consider it under our rules of practice.

Relying on *State* v. *Roberson*, 62 Conn. App. 422, 771 A.2d 224 (2001), and *State* v. *Myers*, supra, 242 Conn. 135, the defendant argues that "the state waived any objection by acquiescing in the procedure, and the trial court never suggested until its ruling that the procedure was inadequate to preserve the record." In *Myers*, the defendant filed a motion for a new trial pursuant to Practice Book § 902, now § 42-53. The state argued that "the defendant's claim of juror bias was initiated through a procedurally defective petition for a new trial." *State* v. *Myers*, supra, 134. Our Supreme Court noted that the motion "clearly [did] not meet the requirements of a *petition* for a new trial because *it too was filed within the confines of the criminal case.*" (Emphasis added.) Id., 135. The court further held that "the issue of juror bias was properly before the trial court in the motion for a new trial brought prior to judgment and pursuant to Practice Book § 902 [now § 42-53]." *State* v. *Myers*, supra, 139. In the present case, the defendant based her motion solely on newly discovered evidence, a claim that must be brought by means of a *petition for a new trial* pursuant to Practice Book

§ 42-55. Therefore, *Myers* offers no support for the proposition for which it is offered by the defendant.

In *Roberson*, the defendant filed a motion for a new trial on the basis of newly discovered evidence. *State v. Roberson*, supra, 62 Conn. App. 425. The trial court conducted a hearing and decided the motion on the merits. Id. This court affirmed the judgment of the trial court and recognized, in a footnote, that the "trial court noted in its memorandum of decision that '[t]he state has waived any objection to the trial court deciding this motion for a new trial under the applicable tests regarding newly discovered evidence.' " Id., 424 n.4. The defendant relies on this footnote to support her argument that the state waived any objection when it acquiesced in the procedure.

We disagree with the defendant's interpretation of *Roberson*. In *Roberson*, the issue of whether the motion was properly before the trial court was not before this court. It was not a part of the statement of the issues, nor was it argued or briefed on appeal. This court does not generally review such issues; see *Martin* v. *Liberty Bank*, 46 Conn. App. 559, 563 & n.3, 699 A.2d 305 (1997); because it would deprive the parties of an opportunity to present argument regarding those issues. See also *Lynch* v. *Granby Holdings, Inc.*, 230 Conn. 95, 99, 644 A.2d 325 (1994). Although we can review a claim when it rises to the level of plain error, this type of review is "reserved for extraordinary circumstances and situations in which the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *Martin* v. *Liberty Bank*, supra, 562 n.2. In *Roberson*, the result would have been the same whether this court dismissed the appeal for lack of subject matter jurisdiction or affirmed the trial court's denial of the defendant's motion for a new trial. Therefore, it did

not undermine the fairness and integrity of and public confidence in the judicial proceedings.

As a final matter, we clarify our previous decisions characterizing the failure to bring a petition for a new trial on the basis of newly discovered evidence as depriving the court of subject matter jurisdiction.[12] In accordance with *Amodio* and its progeny, we recognize that a party's failure to comply with our rules of practice implicates the courts' authority to act. Furthermore, we express our opinion that the trial court should not exercise its authority in cases such as this where a party fails properly to serve a writ of summons and complaint on the adverse party in accordance with Practice Book § 42-55.[13]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[12] Although the following list is not exclusive, those cases include *State v. Arroyo*, 67 Conn. App. 154, 786 A.2d 1124 (2001); *Cadle Co. v. Ginsburg*, 51 Conn. App. 392, 721 A.2d 1246 (1998), cert. denied, 247 Conn. 963, 724 A.2d 1125 (1999); *Waterworks v. Audet*, 29 Conn. App. 722, 617 A.2d 932 (1992); *State v. Smith*, 15 Conn. App. 502, 545 A.2d 1150 (1988); *In re Clifton B.*, 15 Conn. App. 367, 544 A.2d 666 (1988); and *State v. Servello*, supra, 14 Conn. App. 88.

[13] We do so recognizing the fact that the defendant has three years from the judgment within which to bring her petition for a new trial on the basis of newly discovered evidence in accordance with General Statutes § 52-270 as implemented by Practice Book § 42-55. See General Statutes § 52-582.